Marilyn **BRADLEY**

v.

Jorge **CHELEUITTE, M.D.,** Presbyterian Hospital.

**Civ. A. No. 74–1324–F.**

United States District Court, D. Massachusetts.

Nov. 25, 1974.

David H. Lamson, Hamilton & Lamson, Boston, Mass., for plaintiff.

Jeffrey Swope, Palmer & Dodge, Boston, Mass., for defendant Cheleuitte.

Andrew B. Goodspeed, Goodspeed & Stramondo, Boston, Mass., for defendant Presbyterian Hospital.

### ORDER

FREEDMAN, District Judge.

This diversity action is brought by the plaintiff, Marilyn Bradley, who seeks damages for physical injuries incurred by her during and after an operation on her hip performed by the defendant, Dr. Jorge Cheleuitte, in the defendant hospital. The plaintiff claims that the defendants were negligent with regard to the initial diagnosis, surgery, aftercare and decision to release the plaintiff from the hospital. Both defendants have moved, pursuant to Rules 12(b)(2) and (4), to have the action dismissed on the grounds that this Court lacks personal jurisdiction over the defendants and that the service of process on each defendant was insufficient, for which arguments were held on November 7, 1974.

The Court first treats the argument that it lacks personal jurisdiction over the defendants.

In deciding this motion, the Court accepts the plaintiff's allegations as true. Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 663 (1st Cir., 1972). The alleged facts are as follows: Plaintiff is a resident of Massachusetts. While in Puerto Rico, she sustained injuries in the area of her right hip. Thereafter, she was admitted to defendant, Presbyterian Hospital, under the direction of

defendant doctor who is a resident of Puerto Rico and a member of the hospital's professional staff.

On January 3, 1974, the defendant doctor performed orthopedic surgery in the area of the plaintiff's right hip. As part of that surgery, the doctor inserted in the plaintiff's hip a pin commonly referred to in the medical profession as a "jewet pin."

On January 16, 1974, the plaintiff was released, after a minimum amount of therapy, from the defendant hospital, at the direction and with the approval of the defendant doctor. The defendants had no further contact with the plaintiff after that date.

The plaintiff arrived in Boston in great pain. After consultation with her Boston physician, plaintiff was admitted to the Massachusetts General Hospital. On February 6, 1974, the plaintiff was operated on at the Massachusetts General Hospital. The purpose of the surgery was the removal of the "jewet pin" which had been improperly placed by the defendant doctor. As a result of this improper placement, the pin had protruded through the plaintiff's hip into her pelvis causing bone deterioration that would not allow the placement of another pin in that region. Furthermore, the defendants had failed to discover an additional fracture of the plaintiff's pelvis.

Without the aid of an additional pin, plaintiff's recovery has been slow and arduous. She has been forced to remain in traction for a prolonged period of time. There is a significant possibility that the plaintiff's hip may never heal properly and that she may never be able to walk again.

The plaintiff asserts that this Court has personal jurisdiction over these defendants under Section 3(c) of the Massachusetts long-arm statute. M.G.L. c. 223A, § 3(c).[1] Section 3(c) provides: "A court may exercise personal jurisdiction over a person . . . (c) causing tortious injury by an act or omission in this commonwealth . . . ." "This language is derived from the Uniform Interstate and International Procedure Act and represents an effort to resolve, legislatively, the type of conflict over the meaning of the term 'tortious act within this state' which has developed between the Illinois and the New York courts. [Citation omitted.] Section 3(c) is intended to apply only when the act causing the injury occurs within the Commonwealth." Murphy v. Erwin-Wasey, Inc., *supra*, at 663–664, citing St. Clair v. Righter, 250 F.Supp. 148, 150–151 (W.D.Va., 1966); Commissioners' Note, Uniform Interstate and International Procedural Act, 9B Uniform Laws Annot. § 1.03. Thus, personal jurisdiction over these defendants hinges upon whether the defendants committed any act or omission in Massachusetts which caused injury to the plaintiff in Massachusetts.

There is no question that the plaintiff sufficiently alleges the suffering of tortious injury in Massachusetts. Additionally, the plaintiff offers two alternatives allegedly supportive of the proposition that the defendants' negligent pre-release of the plaintiff must be considered "an act or omission in this commonwealth."[2]

---

1. The plaintiff places no reliance on M.G.L. c. 223A, § 3(d) which gives the Court personal jurisdiction over a person ". . . causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . . ." Evidently, plaintiff realizes that these defendants have no relationship or contact with the Commonwealth of Massachusetts except with respect to the services they performed for the plaintiff in Puerto Rico, and therefore, would not be subject personally, under Section 3(d), to the jurisdiction of this Court for their acts or omissions committed in Puerto Rico.

2. M.G.L. c. 223A, § 3(c).

Plaintiff's first alternative views her pre-release from the defendant hospital as an "act" by the defendant doctor which *in effect* sent the plaintiff home to Massachusetts under circumstances which he knew or should have known would contribute to the dislodging of the "jewet pin." Plaintiff contends that this "act" is analogous to the "act" involved in Murphy v. Erwin-Wasey, Inc., *supra*, where the First Circuit Court of Appeals found personal jurisdiction, under Section 3(c), over a defendant who made fraudulent misrepresentations to a resident of Massachusetts by both telephone and mail.

There is no factual basis for asserting that the doctor actually sent the plaintiff to Massachusetts. What he actually did was release the defendant so that she could either return to her home in Massachusetts or go anywhere else outside of the hospital in Puerto Rico.

Even assuming the validity of the plaintiff's conceptualization of the doctor's act, her reliance on the rule enunciated in *Murphy* is misplaced. The holding in *Murphy* is that "[w]here a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state." 460 F.2d at 664. To arrive at this holding the Court analogized the act of mailing a fraudulent misrepresentation into another state to the Second Circuit's finding, in Buckley v. New York Post, 373 F.2d 175 (2nd Cir., 1967), of personal jurisdiction, under a similar Connecticut statute, over ". . . a New York publisher whose newspaper was distributed in Connecticut containing an article alleged to libel a Connecticut resident . . ." Murphy v. Erwin-Wasey, Inc., *supra*, 460 F. 2d at 664.

The obvious similarity between the above two acts is that both acts are intentional. In contrast, the acts of the defendants in this case are at most negligent. This difference is crucial because "[t]he underlying premise of the *Murphy* opinion seems to be that negligent and intentional acts should be treated differently when interpreting statutory jurisdictional language. The *Murphy* court apparently agrees that jurisdiction would not lie had the act with which the court was concerned been negligent, for that act *'merely creates the condition from which damage might later arise.'* [*Id.*] Evidently an intentional act, however, is a type of continuing wrong which carries its perpetrator . . . along and thrusts him, constructively of course, into the domain of the injurious consequences." Margoles v. Johns, 157 U.S.App.D.C. 209, 483 F.2d 1212, 1219–1220 (1973). [Emphasis added.] Furthermore, this distinction ". . . can have a distinct bearing on whether the exercise of jurisdiction thereover is constitutional, for it goes directly to fairness and the degree to which an individual has purposely availed himself of the privilege of conducting activities within the forum state." *Id.*, citing Hanson v. Denckla, 357 U.S. 235, 78 S. Ct. 122, 2 L.Ed.2d 1283 (1958); Rosenblatt v. American Cyanamid Co., 86 S. Ct. 1, 15 L.Ed.2d 39 (1965) (Opinion of Mr. Justice Goldberg in Chambers).

According to the foregoing analysis, the negligent pre-release of the plaintiff "merely created the condition whence damage would later arise." Buckley v. New York Post, *supra*, 373 F.2d at 179. Therefore, this act is distinguished from those acts involved in *Murphy* and *Buckley* and cannot, of course, be considered analogous to either one.

Plaintiff's second alternative, namely attempting to view the defendants' negligent pre-release of the plaintiff as "an omission," does nothing to further her assertion that the defendants committed an ". . . act or omission in this commonwealth." M.G.L. c. 223A, § 3(c). It is nothing more than a restatement of her first assertion.

■ Consequently, for the foregoing reasons, this Court finds that the de-

fendants' negligent pre-release of the plaintiff cannot be construed as having occurred in Massachusetts. The medical treatment occurred solely in Puerto Rico, and any effort by this Court to characterize it differently cannot be properly rationalized. Therefore, this Court lacks personal jurisdiction in this matter and defendants' motions to dismiss are allowed.

For obvious reasons, the Court need not reach the question of insufficient service of process on each defendant.

Case is dismissed. So ordered.