DAVID D. BURTNER & another, individually and as trustees,[1] *vs.* OLIVER W. BURNHAM & others.[2]

Plymouth. December 15, 1981. — February 5, 1982.

Present: ARMSTRONG, CUTTER, & BROWN, JJ.

*Jurisdiction*, Nonresident, Under long-arm statute, Consumer protection case. *Practice, Civil*, Consumer protection case. *Pleading, Civil*, Complaint.

The acts of a New Hampshire real estate broker in selling a parcel of rural land located in Maine to purchasers living in Massachusetts, consisting of his representations by mail and by telephone in New Hampshire to the purchasers in Massachusetts, which the purchasers relied upon by mailing from Massachusetts to the broker in New Hampshire a signed copy of the agreement of sale, were sufficiently intentional and caused sufficient reliance by the purchasers within Massachusetts to confer on the Massachusetts courts personal jurisdiction over the broker and three nonresident sellers under G. L. c. 223A, § 3(c). [161-164]

A case brought under G. L. c. 93A, raising doubt whether a violation of that chapter constituted a "tortious injury" within the meaning of G. L. c. 223A, § 3(c), was an appropriate case in which to permit the plaintiffs an opportunity to amend their complaint to include a count asserting the common law action for deceit which would be supported by the allegations of the complaint. [164-165]

CIVIL ACTION commenced in the Superior Court Department on August 27, 1980.

The case was heard by *Keating, J.*, on a motion to dismiss.

*David D. Burtner* for the plaintiffs.

*William E. Stanton* (*Paul J. Driscoll* with him) for the defendants.

CUTTER, J. The complaint filed in the Superior Court August 27, 1980, made in effect the following pertinent al-

[1] Vanessa J. Burtner, who with David D. Burtner was a trustee of the Burtner Family Trust.

[2] Stella Burnham, Walter Whitney, and Virginia Whitney.

legations. Two defendants, the Burnhams, reside in New Hampshire. The Whitneys, the other two defendants, formerly resided in New Hampshire but now live in Florida. Oliver Burnham was a real estate broker licensed in New Hampshire where he maintained an office. He acted in 1976 for himself and his wife and for the Whitneys in selling to the plaintiffs rural land in Whitefield, Maine, owned by all the defendants. He represented to the plaintiffs that the parcel then sold contained 125 acres, and the plaintiffs relied on this representation. Title was transferred to the plaintiffs about February 21, 1976. In 1980, a survey showed that the parcel contained only ninety-three acres, a deficiency which "the defendants knew or should have known." The complaint seeks relief under G. L. c. 93A, and asserts jurisdiction only under G. L. c. 223A, § 3(c).[3] Attached to the complaint were copies of letters sent in June, 1980, by attorneys for the Burtner Family Trust, by certified mail, to Oliver Burnham in New Hampshire and to the Whitneys in Florida, demanding a refund of $6,400. This was asserted to be the value (at $200 an acre) of the thirty-two acre deficiency.

Service upon the Whitneys of the complaint was made in Florida in 1980 by a local officer authorized to serve process and, also by such an officer, upon the Burnhams in New Hampshire. In any event, attorneys for the defendants filed a special appearance to contest the jurisdiction of the Superior Court. A motion to dismiss under Mass.R.Civ.P. 12(b)(1) and 12(b)(2) was based in part upon the alleged lack of personal jurisdiction over any of the four defendants.

With the motion to dismiss there was filed an affidavit of Oliver Burnham stating, among other things, (a) the facts about the four-party ownership of the Maine land, (b) that

---

[3] Section 3, as amended through St. 1976, c. 435, (emphasis supplied) reads, so far as here relevant: "A court may exercise personal jurisdiction over a person, who acts directly *or by an agent*, as to a cause of action in law or equity arising from the person's *(a)* transacting any business in this commonwealth; . . . *(c)* causing *tortious injury* by an act or omission in this commonwealth."

he (Burnham) was visited at his New Hampshire office in January, 1976, by David Burtner, whom he had never met before, and (c) that he told Burtner he then had no land in New Hampshire but did have an interest in the parcel in Whitefield, Maine.[4] Burnham and Burtner visited the Maine land only once and had only two meetings in Burnham's New Hampshire office. Burnham never met with the Burtners in Massachusetts and the Burtners never met with the other three defendants at any time. A deed was delivered to the Burtners in New Hampshire and they there gave back a mortgage.

Vanessa Burtner by affidavit stated that she lived in Hingham, Massachusetts, and received there by mail from Oliver Burnham, "a realator [*sic*] of Hillsboro, New Hampshire," a United Farm Agency envelope containing "an offer letter and an agreement . . . to be signed by . . . [her] and . . . [her] husband as buyers" of the Maine land, represented to contain 125 acres. She relied upon the representation, signed the agreement in Hingham, and returned the agreement. Burtner filed an affidavit which stated that in 1975 he sent from Hingham inquiries to United Farm Agency (which then had a Boston office) about farm property in southern New Hampshire, southern and central Maine, and Massachusetts. Burnham was a United Farm Agency representative. Burnham had sent land listings to Burtner in Hingham. Burnham told Burtner about the Maine land. They made an appointment to meet in Portsmouth, New Hampshire, for the purpose of visiting the Maine land and they in fact did visit the land. Thereafter Burnham communicated with Burtner by mail and Burtner mailed to

---

[4] Burnham's affidavit reported the following matters (not directly relevant to the present issues) as having been then discussed by Burnham with Burtner. The coowners had bought the land without having it surveyed. They had received a deed describing the parcel as "consisting of 125 acres more or less," but "had no intention of having . . . [the land] surveyed because of the cost." Burnham suggested that Burtner could have the land surveyed before buying it, but Burtner declined to do so. These statements, if true, appropriately should be established at the trial of this case on the merits.

Burnham a deposit of $500. In other respects, Burtner's affidavit was similar to that of Mrs. Burtner.

Annexed to Burtner's affidavit were somewhat obscure and illegible excerpts from catalogs issued by United Farm Agency describing (among other parcels of farm land) the Maine land as containing 125 acres, a letter from Burnham to Burtner in Hingham dated January 21, 1976 (requesting the Burtners to sign and return an enclosed agreement of sale), and a copy of the agreement of sale signed by all the plaintiffs and defendants.

The motion to dismiss was allowed. The plaintiffs have appealed.

1. The allegations of the complaint and the affidavits of the parties permit the plaintiffs to assert that the motion to dismiss under rule 12(b)(1) and (2) properly should be dealt with on the basis that a representation by mail and by telephone of acreage had been made by Burnham in New Hampshire to the Burtners in Massachusetts and had been acted upon by the Burtners at least by mailing back from Massachusetts to Burnham in New Hampshire a signed copy of the agreement of sale. The question for decision is whether Burnham, acting for the defendants, did enough to bring himself and the other defendants within the reach of the Massachusetts "long-arm" statute, G. L. c. 223A, § 3(*a*) or § 3(*c*). The Burtners had the burden of establishing (by the complaint or by affidavits) that the defendants, by Burnham acting in their behalf, had so acted as to make the statute applicable to the defendants. See *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. 149, 151 (1978).

At first, c. 223A, § 3, was regarded as designed "as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." See *"Automatic" Sprinkler Corp. of America* v. *Seneca Foods Corp.*, 361 Mass. 441, 443 (1972); *Ross* v. *Ross*, 371 Mass. 439, 441-442 (1976). It now appears to be recognized that application of c. 223A requires that (even if the fact pattern of the case is *constitutionally* acceptable) the circumstances of the particular case come within one of the *specific subsections* of c. 223A,

§ 3. See *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 6 (1979), where it was said that "c. 223A, § 3, asserts jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statute has been established." In the *Good Hope Indus.* case (at 9 to 13) jurisdiction was found to exist under § 3(*a*), because the defendant in that case "had not [merely] participated in an isolated transaction without commercial consequences in Massachusetts" but "had engaged in an enterprise of substantial dimension and duration with a party whose business headquarters . . . [and those of closely associated companies] were known to be in Massachusetts." *Id.* at 9. The *"Automatic" Sprinkler* case, 361 Mass. 441 (1972); the *Droukas* case, 375 Mass. 149 (1978); and *Nichols Associates* v. *Starr*, 4 Mass. App. Ct. 91 (1976), all cases where jurisdiction had been found to be lacking because of insufficient contacts with the Massachusetts nonresident defendant, were distinguished. Other cases dealing with G. L. c. 223A, § 3(*a*), include *Nova Biomedical Corp.* v. *Moller*, 629 F.2d 190, 192-194 (1st Cir. 1980); *Boston Super Tools, Inc.* v. *RW Technologies, Inc.*, 467 F. Supp. 558, 560-562 (D. Mass. 1979).

Burnham engaged in New Hampshire in at least general representation of United Farm Agency (an organization with a Massachusetts office). He used its catalog of available farms to offer the Maine property in which he had an interest. Thus, it may be that enough Massachusetts contacts could be found to warrant establishing "long-arm" jurisdiction over Burnham and his coowners under § 3(*a*) on the ground that he was "transacting . . . business in Massachusetts." See *Carlson Corp.* v. *University of Vt.*, 380 Mass. 102, 105-109 (1980). We, however, expressly do not decide that question because we think that (on the allegations of the complaint and on uncontroverted provisions of the Burtners' affidavits) jurisdiction should be found to exist under c. 223A, § 3(*c*), particularly in the light of Federal cases in the First Circuit.

Burnham's communications from New Hampshire by mail and telephone to the Burtners already have been mentioned. That the Burtners received these in Massachusetts and relied upon them here is suggested by their signing in Massachusetts the sales agreement sent to them by Burnham and returning it by mail to New Hampshire. Although the Massachusetts cases already cited deal principally with c. 223A, § 3(a), various Federal cases have dealt with § 3(c). Close to the facts of the present case is *Murphy* v. *Erwin-Wasey, Inc.*, 460 F.2d 661, 663-664 (1st Cir. 1972). In that diversity action, a corporation having no place of business in Massachusetts sent a check by mail from outside the Commonwealth to the plaintiff in Massachusetts. The check, at least by implication, misrepresented the amount due to the plaintiff and caused him to rely on it in Massachusetts to his detriment. The court followed Judge Friendly's opinion (under the Connecticut long-arm statute) in *Buckley* v. *New York Post Corp.*, 373 F.2d 175, 178-179 (2d Cir. 1967), where the author by analogy refers to the damage caused by "the frequently hypothesized but rarely encountered gunman firing across a state line." In any event, the *Murphy* case (*supra* at 664) decided (emphasis supplied) that where "a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, *for jurisdictional purposes*, acted within that state."[5] Cases following the *Murphy* case, in some respects at least, include *McFaddin* v. *National Executive Search, Inc.*, 354 F. Supp. 1166, 1171-1172 (D. Conn. 1973); *North Am. Video Corp.* v. *Leon*, 480 F. Supp. 213, 218 (D. Mass. 1979). See also *Whittaker Corp.* v. *United Aircraft Corp.*, 482 F.2d 1079, 1084 (1st Cir. 1973); *Thorington* v. *Cash*, 494 F.2d 582, 587 (5th Cir.

---

[5] We need not now decide the choice of law issue mentioned later in the same paragraph of the *Murphy* case, 460 F.2d at 664. Compare Restatement (Second) of Conflict of Laws § 189 (1971), with *Doody* v. *John Sexton & Co.*, 411 F.2d 1119, 1121 (1st Cir. 1969). Similarly, we need not now decide whether G. L. c. 93A would have application to this proceeding with respect to land in Maine.

1974).  Compare *Bradley* v. *Cheleuitte,* 65 F.R.D. 57, 60
(D. Mass. 1974, where the action outside Massachusetts, al-
leged to have had consequences within Massachusetts, was
held to be negligent and not intentional), and *Kolikof* v.
*Samuelson,* 488 F. Supp. 881, 883 (D. Mass. 1980, where no
material giving a basis for liability was transmitted in any
manner across the State line, but the alleged ground of ac-
tion was that the telephone message was illegally recorded
on tapes outside Massachusetts).  Compare also *Margoles* v.
*Johns,* 483 F.2d 1212, 1219-1220 (D.C. Cir. 1973, criticiz-
ing adversely the apparent distinction in the *Murphy* case
between *intentional* acts outside Massachusetts causing a
"tortious injury" within the Commonwealth and *negligent*
acts creating a condition from which damage might later
arise), and *Weller* v. *Cromwell Oil Co.,* 504 F.2d 927, 930-
931 (6th Cir. 1974).  We are of opinion that Burnham's acts
(as described in the complaint and the Burtner affidavits)
may be found to have been sufficiently intentional and to
have caused sufficient reliance by the Burtners within
Massachusetts, to give the Massachusetts courts jurisdiction
under c. 223A, § 3(*c*).[6]

2.  The only cause of action mentioned in the complaint is
one under G. L. c. 93A.  Whether a violation of that chap-
ter constitutes a "tortious injury" within the meaning of
c. 223A, § 3(*c*), may be open to some doubt.  See *Slaney* v.
*Westwood Auto, Inc.,* 366 Mass. 688, 703-704 (1975),
where Justice Quirico refers to such a claim as "neither
wholly tortious nor wholly contractual" but as a statutory
remedy, "sui generis."  See also *York* v. *Sullivan,* 369 Mass.
157, 164 (1975).  In any event, the allegations of the com-
plaint are sufficient to support a common law action for
deceit, which would be clearly within the *Murphy* case
principle.  This "is an appropriate case in which to permit
the plaintiff[s] an opportunity to amend . . . [the] complaint"

---

·  [6] There is thus no occasion to decide whether nonintentional or
negligent action outside Massachusetts causing consequences here will
permit exercise of jurisdiction under G. L. c. 223A, § 3(*c*).

to include a count asserting such a cause of action. *Whitins-ville Plaza, Inc.* v. *Kotseas,* 378 Mass. 85, 101 (1979). See *Nader* v. *Citron,* 372 Mass. 96, 104-105 (1977). See also *Ditommaso* v. *Laliberte,* 9 Mass. App. Ct. 890 (1980). If such an amendment is promptly sought and allowed and proof is attempted pursuant to the amendments, a full record will facilitate determination of questions not now before us, such as (a) what law (that of Maine or Massachusetts, see note 5, *supra*) is applicable, and (b) what statute of limitations, if any, is to control. See *Baldassari* v. *Public Fin. Trust,* 369 Mass. 33, 43-44 (1975).

3. The judgment of dismissal is reversed and the case is remanded to the Superior Court for further proceedings.

*So ordered.*