REMF CORP. & another[1] *vs.* JOSE MIRANDA & another.[2] No. 02-P-705. January 8, 2004. *Jurisdiction,* Personal, Nonresident, Long-arm statute.

For failure to establish sufficient minimum contacts to permit personal jurisdiction over the defendants, a Florida corporation and a Florida resident, a judge of the Superior Court allowed the defendants' motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(2), 365 Mass. 755 (1974). We affirm.

We rehearse the essential ingredients for exercising personal jurisdiction over nonresident defendants. The inquiry is twofold. We look first to see whether the plaintiffs have satisfied their burden of establishing sufficient facts to support the assertion of personal jurisdiction over the defendants under the long-arm statute, G. L. c. 223A, § 3. See *Good Hope Indus., Inc.* v. *Ryder Scott Co.,* 378 Mass. 1, 2 (1979); *Carlson Corp.* v. *University of Vt.,* 380 Mass. 102, 105 (1980). Those facts, as set forth by the motion judge and supplemented by uncontested statements in the materials, are uncontroverted. *Id.* at 104 n.4. *Fern* v. *Immergut,* 55 Mass. App. Ct. 577, 579-580 (2002). The second issue is whether the out-of-State defendants had sufficient minimum contacts with Massachusetts that subjecting them to personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *International Shoe Co.* v. *Washington,* 326 U.S. 310, 316 (1945), quoting from *Milliken* v. *Meyer,* 311 U.S. 457, 463 (1940). "General Laws c. 223A, § 3, cannot authorize jurisdiction which is constitutionally unacceptable, even though the fact pattern asserted in support of jurisdiction apparently satisfies the statute's literal requirements. Likewise, G. L. c. 223A, § 3, asserts jurisdiction over the person to the constitutional limit [see *'Automatic' Sprinkler Corp.* v. *Seneca Foods Corp.,* 361 Mass. 441, 443 (1972)] only when some basis for jurisdiction enumerated in the statute has been established." *Heins* v. *Wilhelm Loh Wetzlar Optical Machinery GmbH & Co. KG,* 26 Mass. App. Ct. 14, 16 (1988), quoting from *Good Hope Indus., Inc.* v. *Ryder Scott Co.,* 378 Mass. at 6.

Consistent with rule 12(b), the defendants have not answered, and we take as true the facts set forth in the plaintiffs' amended complaint, the affidavits of defendant Miranda, and the deposition testimony of the transaction closing agent, David H. Hayward, of New England Marine Documentation Service (NEMDS).

1. *Facts.* Kenneth Goldberg is president of REMF, a Massachusetts corporation with offices in Boston and Wellesley. In May of 2001, Goldberg became interested in purchasing a yacht called the "Capella" after seeing it advertised

---

[1]East Coast Corp.

[2]Caribbean Yacht Sales Corp.

in a nationally distributed publication and on various Internet websites. Miranda, a Florida resident and president of the Caribbean Yacht Sales Corp., owned the Capella and was interested in selling it through a broker[3] located in Fort Lauderdale, Florida. Goldberg attended a boat show in Miami at which he met Miranda and viewed the Capella. Goldberg later contacted the broker to inquire further about the Capella, and the broker mailed and faxed additional information about the Capella to Goldberg at REMF's office in Boston.

By fax, Goldberg tendered a written offer to purchase the Capella for $1.2 million. The offer included a trade of Goldberg's used yacht. The broker forwarded the offer to Miranda in Coral Gables, Florida. Miranda made a counteroffer of $1.35 million plus the trade to Goldberg. Goldberg accepted it by signing a sales contract in Massachusetts. He then faxed the signed contract to the broker, who forwarded it to Miranda. Miranda signed the contract in Florida and faxed Goldberg a copy bearing both parties' signatures. Buyer and seller had several subsequent telephone conversations regarding the proposed transaction, which was contingent on Miranda's being satisfied that Goldberg's yacht was in good operating condition.

After Miranda's inspection of Goldberg's yacht in Florida, the idea of the trade soured. Miranda decided not to accept it. The broker notified Goldberg that Miranda remained interested in selling the Capella for $2.05 million without the trade. Goldberg expressed interest in buying the Capella at the new price. The broker sent Goldberg's signed letter of intent to Miranda, who countersigned it on May 23, 2001. Goldberg and Miranda signed a final purchase agreement on May 29, 2001. The agreement stated that the Capella would be delivered to Goldberg in Miami, Florida. The agreement made no mention whether Florida or Massachusetts law applied in the event a dispute arose.

Goldberg traveled to Miranda's home in Coral Gables and conducted a sea trial of the Capella. Goldberg arranged to have the purchase price transferred from accounts in Boston to the broker on June 6, 2001. The parties agreed that NEMDS of Winchester, Massachusetts, would act as the transaction closing agent. Miranda sent closing documents to NEMDS. Representatives of REMF took possession of the Capella on June 8, 2001, in Miami. Shortly thereafter, a dispute arose between the parties regarding the condition of the Capella and its equipment. The plaintiffs claimed that the defendants breached the sales contract and misrepresented the condition of the Capella.

2. *Analysis.* The parties do not dispute that the allegations of the amended complaint meet the criteria of at least one subsection of the long-arm statute. The motion judge ruled that the defendants did not have sufficient minimum contacts with Massachusetts to subject them to personal jurisdiction consistent with "fair play and substantial justice" because the defendants' involvement in Massachusetts was so limited. She characterized the deal as a one-time transaction. She underscored that the defendants' contacts consisted entirely of sending documents relating to the sale to Goldberg in Massachusetts and making telephone calls to him in Boston.

As such, the case is governed in most material respects by *Droukas* v.

---

[3]The motion judge found that the broker had an agency relationship with Miranda with respect to the transaction and attributed the broker's actions to the defendants for purposes of the motion. We do the same.

*Divers Training Academy, Inc.*, 375 Mass. 149 (1978). In that case, the Supreme Judicial Court stated that, even if it were to find that G. L. c. 223A, § 3(*b*), was satisfied by the defendant's contracting to supply two marine engines to buyers in Massachusetts, the defendant's activities were not "of sufficient dimension to withstand the constitutional limitations" of personal jurisdiction. *Id.* at 159. The court considered the transaction "isolated in nature" where the defendant's chief executive officer merely sent a purchase confirmation letter and a few miscellaneous letters to Massachusetts. *Id.* at 151-152. As here, there were no other significant contacts with the Commonwealth to constitute an act by which the defendant availed himself of conducting activities within the forum State. Contrast *Kleinerman* v. *Morse*, 26 Mass. App. Ct. 819, 822 (1989) (defendant's contacts "went well beyond isolated incidents such as placing an advertisement, receiving several telephone conversations in connection with a particular transaction, and engaging in some correspondence"). The defendants in the instant case did not purposely avail themselves of the privilege of conducting business in Massachusetts by their acts of advertising nationally and responding to the inquiries of a prospective purchaser who happened to live here.

The plaintiffs, however, would distinguish this case from *Droukas* on the following ground: the plaintiffs suggest that when Miranda rejuvenated the sale of the Capella after he had reneged on the original trade contract, he exposed himself to a jurisdictional hold under G. L. c. 223A, § 3(*c*), that met the constitutional requirements of due process, by making false representations to Goldberg in Massachusetts concerning the Capella.[4] We reject that formulation. From the beginning of their negotiations until the final agreement was executed, there was a continuous course of conduct between the parties. The judge could plausibly arrive at the conclusion, as do we, that the cash sale arose out of the earlier failed transaction. Contrast *Ealing Corp.* v. *Harrods Ltd.*, 790 F.2d 978, 981-982 (1st Cir. 1986) (defendant caused tortious injury in Massachusetts by transmitting "draft letter of agreement" to plaintiff in Massachusetts where telex allegedly contained fraudulent misrepresentation). The amended complaint contains only generalities about the subsequent modification of the sale. The correspondence between the parties was not significantly greater here than in *Droukas*. The action was properly dismissed.

*Judgment affirmed.*

*John B. Harkavy* for the plaintiffs.

*Stephen S. Young* for the defendants.

---

[4] The plaintiffs' amended complaint alleges a breach of the "trade" contract in count I. There follows a second and separate breach of contract count which adverts to the plaintiffs' reliance upon specific representations of the defendant Miranda concerning equipment which allegedly was removed after he signed the second May 29, 2001, "cash" agreement. While counts III and V of the amended complaint are based on fraud, the gist of the plaintiffs' action is largely contractual. See *Barber* v. *Fox*, 36 Mass. App. Ct. 525, 529 (1994) (contract limitations period applied to plaintiffs' fraud and breach of fiduciary duty counts; although counts sounded in tort, court found "essence of each claim" to be contractual). The plaintiffs apparently admitted in their memorandum in opposition to defendants' motion to dismiss that this "is essentially a straightforward breach of contract case."