WILLIAM C. ROBERTS & another[1] *vs.* LEGENDARY MARINE
SALES.

No. 04-P-871.

Norfolk. May 9, 2005. - November 29, 2005.

Present: GREENBERG, BROWN, & BERRY, JJ.

Further appellate review granted, 446 Mass. 1105 (2006).

*Jurisdiction,* Personal, Long-arm statute.

A Superior Court judge erred in dismissing a civil complaint for lack of
personal jurisdiction over the defendant Florida company, where, although
there was no showing that the defendant was transacting business or
contracting to supply services or things in Massachusetts within the mean-
ing of G. L. c. 223A, § 3(*a*) or (*b*), the Massachusetts long-arm statute
[199-200], the complaint nevertheless alleged a tortious injury by the act
or omission of the defendant that occurred in Massachusetts in satisfaction
of G. L. c. 223A, § 3(*c*) [200-202]; moreover, in the circumstances of the
case, the assertion of personal jurisdiction under § 3(*c*) did not offend due
process requirements [202-204].

CIVIL ACTION commenced in the Superior Court Department on
May 22, 2003.

A motion to dismiss was heard by *Isaac Borenstein,* J.

*Richard A. Eustis* for the plaintiffs.

*Joseph D. Kropp* for the defendant.

GREENBERG, J. Summarized, the complaint herein, filed on
May 22, 2003, in Superior Court, alleged the following. Around
March, 2002, the plaintiffs saw an Internet advertisement for a
1999 thirty-eight foot Fountain Lightning boat listed by the
defendant, a Florida boat dealership, for $130,000 less than the
list price of $280,000. The advertisement stated that the boat
had only ten hours on it.[2]

Plaintiff William A. Roberts placed a telephone call express-
ing interest in purchasing the boat. He spoke with a salesperson

---

[1]William A. Roberts.

[2]The advertisement read: "1999 38' Fountain Lightning with Twin 500
EFI's/Never Titled/This Boat lists at over $280,000/Watch the competition
disappear in your mist/THIS COULD BE THE BUY OF A LIFETIME/ONLY
TEN HOURS ON BOAT/Make an offer."

and told him that he was interested and that he would use and keep the boat in Massachusetts. The boat was represented by Legendary Marine Sales as "new" with only ten hours of use on its engines. After several more telephone conversations and electronic mail exchanges, Roberts ultimately agreed to purchase the boat for $150,000.

The defendant mailed a purchase agreement to plaintiff William A. Roberts's home address in Wellesley. The signed agreement was mailed back to Florida. Knowing that the plaintiffs lived in Massachusetts, the defendant recommended a specific Florida boat surveyor, who subsequently viewed the boat and made certain recommendations.

In June, 2002, the boat was delivered to Falmouth. Upon its delivery, plaintiff William A. Roberts noticed numerous defects and brought it to a marina for servicing. He learned that in addition to these defects, the boat had a blown fuel pump and other mechanical problems. It appeared that use of the boat's twin engines had been heavier than represented by the defendant. In addition, the engines had substantially more hours of use than originally represented by the defendant. Letters to that effect were met with flat denials by the defendant.

As a result, on September 4, 2002, the plaintiffs sent the defendant a G. L. c. 93A (unfair and deceptive practices) demand letter. The instant complaint against the defendant alleged breach of contract, breach of express and implied warranty, and intentional and negligent misrepresentation. In response to the complaint, the defendant filed a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(2), 365 Mass. 754 (1974), for lack of personal jurisdiction and supported it with two affidavits. The plaintiffs then filed an affidavit of William A. Roberts that reiterated the allegations in their complaint. The judge allowed the motion, and the plaintiffs appealed.

1. *G. L. c. 223A, § 3(a) and (b).* The Massachusetts long-arm statute, G. L. c. 223A, § 3, as inserted by St. 1968, c. 760, provides that a court may exercise personal jurisdiction over a person[3] as to causes of action arising from the person's "*(a)* transacting any business in this Commonwealth; *(b)* contracting

_____

[3]"The term 'person' is defined in G. L. c. 223A, § 1, to include a corporation." *Intech, Inc.* v. *Triple "C" Marine Salvage, Inc.,* 444 Mass. 122, 125 (2005).

to supply services or things in this commonwealth; . . . [or] (*c*) causing tortious injury by an act or omission in this commonwealth . . . ."

The motion judge ruled that the facts here with respect to transacting business and contracting to supply things in the Commonwealth are indistinguishable from those in *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. 149 (1978). In *Droukas*, the Supreme Judicial Court stated that even if it were to find that G. L. c. 223A, § 3(*b*), was satisfied by the defendant's contracting to supply two marine engines to buyers in Massachusetts, the defendant's activities were not "of sufficient dimension to withstand the constitutional limitations" of personal jurisdiction. *Id.* at 159. The court considered the transaction "isolated" in nature where the defendant's chief executive officer merely sent a purchase confirmation letter and a few miscellaneous letters to Massachusetts. *Id.* at 151-152, 154. As here, there were no other significant contacts with the Commonwealth from which it could be said that the defendant conducted business within the forum State. The sale at issue here is the only sale that the defendant has ever made to a resident of Massachusetts. See *Intech, Inc.* v. *Triple "C" Marine Salvage, Inc.*, 444 Mass. 122, 125, 127 (2005). Contrast *Kleinerman* v. *Morse*, 26 Mass. App. Ct. 819, 822 (1989) (defendant's contacts "went well beyond isolated incidents such as placing an advertisement, receiving several telephone conversations [*sic*] in connection with a particular transaction, and engaging in some correspondence"). In this respect, the judge correctly concluded that the facts surrounding the sale in the present case more closely resemble the "isolated transaction" in *Droukas* and do not rise to the level of transacting "business" under § 3(*a*). As in *Droukas*, an independent boat shipper was hired and paid by Roberts for the boat to be shipped to Massachusetts. Consequently, there is no showing that there was "contracting to supply services or things in this Commonwealth" under § 3(*b*).

2. *G. L. c. 223A, § 3(*c*).* Our analysis, however, does not end here. The plaintiffs also rely on another portion of the long-arm statute, G. L. c. 223A, § 3(*c*), causing tortious injury by an act or omission in this Commonwealth, as a basis for jurisdiction.

Counts IV and V of their complaint allege intentional and negligent misrepresentation of material facts that caused them to purchase a defective boat. This jurisdictional basis requires an evaluation of the tort theories in the complaint, the activities of the parties underlying the plaintiffs' allegations, and the linkages, if any, between the defendant's activities and the harm alleged by the plaintiff. The burden of demonstration is on the plaintiffs, who are asserting jurisdiction, see *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. at 151; *Tatro* v. *Manor Care, Inc.*, 416 Mass. 763, 767 (1994), and the statute is to be read broadly, see *id.* at 771, and *Connecticut Natl. Bank* v. *Hoover Treated Wood Prod., Inc.*, 37 Mass. App. Ct. 231, 235 (1994).

The gist of the plaintiffs' tort counts are that the defendant misrepresented material facts with respect to the condition of the boat. The plaintiffs allege that the boat was advertised as having "only ten hours" of use and that it was repeatedly referred to as "new." The plaintiffs further allege that they relied on these misrepresentations. When the boat was delivered and had "serious defects," the plaintiffs had it inspected and discovered that the boat had a blown fuel pump, mechanical problems, and seventy-four to seventy-six hours on the engine.

General Laws c. 223A, § 3(*c*), requires two elements for the assertion of long-arm jurisdiction: (1) a tortious injury by the act or omission of the defendant; and (2) that the tortious act or omission occur in the Commonwealth. See *Murphy* v. *Erwin-Wasey, Inc.*, 460 F.2d 661, 664 (1st Cir. 1972) (noting that § 3(*c*) is "intended to apply only when the act causing the injury occurs within the Commonwealth").

In *Murphy* v. *Erwin-Wasey, Inc., supra*, the United States Court of Appeals for the First Circuit stated that mailing a fraudulent misrepresentation into a State could subject the sender to that State's jurisdiction if the recipient relied upon it or was deceived by the misrepresentation. *Id.* at 664-665. The court held that if "a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state." *Id.* at 664. The First Circuit has also noted that a single act within the forum State could, in "a proper situation," subject a defendant to the assertion of

personal jurisdiction under Massachusetts case law. *Ealing Corp.* v. *Harrods Ltd.*, 790 F.2d 978, 983 (1st Cir. 1986), citing *Morrill* v. *Tong*, 390 Mass. 120 (1983).

We have similarly held that a common-law action for deceit occurring within the Commonwealth falls within the ambit of the long-arm statute. In *Burtner* v. *Burnham*, 13 Mass. App. Ct. 158 (1982), Massachusetts plaintiffs sued defendants from New Hampshire and Florida. The plaintiffs had purchased real property located in Maine, but the property had been described as larger than it actually was. The false representation about the land had been sent to the plaintiffs in Massachusetts. We held that the allegations of fact were sufficient to support a "common law action for deceit." *Id.* at 164. The court also stated that "Burnham's acts . . . may be found to have been sufficiently intentional and to have caused sufficient reliance by the Burtners within Massachusetts, to give the Massachusetts courts jurisdiction under c. 233A, § 3(*c*)." We reversed the lower court's dismissal for lack of personal jurisdiction. *Ibid.* See *Rye* v. *Atlas Hotels, Inc.*, 30 Mass. App. Ct. 904, 906 (1991) (disapproved on other grounds in *Tatro* v. *Manor Care, Inc.*, 416 Mass. at 772 n.5). The plaintiffs' allegations here satisfy § 3(*c*).

We next consider whether the assertion of jurisdiction under § 3(*c*) of the statute would offend due process requirements. The element of intent in an action for fraudulent misrepresentation has been construed as crucial in satisfying due process requirements in cases decided by the First Circuit and by this court. In *Murphy* v. *Erwin-Wasey, Inc.*, 460 F.2d at 664, the court stated that "[t]he element of intent [in a fraudulent misrepresentation case] persuades us that there can be no constitutional objection to Massachusetts asserting jurisdiction over the out-of-state sender of a fraudulent misrepresentation, for such a sender has thereby 'purposefully [availed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' *Hanson* v. *Denckla*, 357 U.S. 235, 253 . . . (1958)." *Id.* at 664. This determination, combined with the assessment that the "act" of misrepresentation occurred in Massachusetts, impelled the court

to hold that the exercise of jurisdiction over the defendant comported with due process. *Ibid.* The court analogized the sending of a fraudulent misrepresentation into a State to "the frequently hypothesized but rarely encountered gunman firing across a state line." *Ibid.*, quoting from *Buckley* v. *New York Post Corp.*, 373 F.2d 175, 179 (2d Cir. 1967). This conclusion that intent satisfies the constitutional due process requirement has been cited in Federal and State decisions in Massachusetts. See, e.g., *Ealing Corp.* v. *Harrods Ltd.*, 790 F.2d 978; *Ganis Corp. of California* v. *Jackson*, 822 F.2d 194, 198 (1st Cir. 1987); *Burtner* v. *Burnham*, 13 Mass. App. Ct. at 163. Consequently, the plaintiffs' cause of action for fraudulent misrepresentation passes the constitutional test.

The defendant relies on *REMF Corp.* v. *Miranda*, 60 Mass. App. Ct. 905 (2004), as conclusively establishing that due process does not permit the· exercise of jurisdiction over it. At first blush, the cases seem similar, as both involve a boat purchased by a Massachusetts plaintiff from a Florida defendant and an allegation of misrepresentation. However, there are important factual differences that distinguish them. In *REMF Corp.*, the Massachusetts plaintiff took several trips to Florida, the residence of the defendant. The plaintiff first saw the boat in Miami at a boat show, later conducted a sea trial of the boat in Coral Gables, and sent his own representatives to Florida to take possession of the boat. *Id.* at 906. Here, based on the allegations of the plaintiff's complaint, neither plaintiff took a single trip to Florida and the entire transaction was conducted through communications made between the defendant in Florida and one of the plaintiffs in Massachusetts.

In terms of the locus of the misrepresentation, discussed above, a crucial element in establishing jurisdiction both under G. L. c. 223A, § 3(*c*), and the due process clause, the instant case is more analogous to the case of *Ealing Corp.* v. *Harrods, Ltd.*, *supra*. The tortious injury in *Ealing Corp.* was held to have occurred in Massachusetts because a telex communication contained the fraudulent misrepresentation. The *REMF Corp.* court distinguished its case from *Ealing Corp.* because significant portions of the *REMF Corp.* transaction had taken place in Florida.

Because the plaintiffs have satisfied the jurisdictional requirements of one subsection of G. L. c. 223A, § 3, see *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 2 n.3 (1979), and *Intech, Inc.* v. *Triple "C" Marine Salvage, Inc.*, 444 Mass. at 125, the judgment must be reversed.

*So ordered.*