Irving WILLIS, Plaintiff,

v.

AMERICAN PERMAC, INC., and Boehler & Weber, Inc., Defendants.

Civ. A. No. 78–1910–S.

United States District Court,
D. Massachusetts.

Feb. 10, 1982.

Albert P. Zabin, Boston, Mass., for plaintiff.

Leon Birnbaum, Boston, Mass., Mark H. Sparrow, Jacobs & Jacobs, New York City, for defendants.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

Plaintiff Irving Willis brings this action for breach of a patent licensing agreement against American Permac, Inc. ("API") and Boehler & Weber, Inc. ("BOWE"). Willis also alleges that BOWE wrongfully induced API to breach the agreement. The defendants have moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(2). In the alternative, they request that I transfer this case to the Eastern District of New York. For the reasons which follow, their motions are denied.

*Facts.*

The following facts appear from filed depositions and affidavits and from the allegations of the complaint:

Mr. Willis is a resident of Massachusetts. API is a New York corporation.[1] BOWE is a German corporation with its principal place of business in West Germany. API is a wholly-owned subsidiary of BOWE.

In 1968, Willis became a sales representative for API. His responsibilities included selling BOWE dry cleaning equipment to the hospital market. To facilitate this work, he conducted classes and seminars for various clients, supervised the installation of BOWE systems and prepared layouts for the equipment. He has performed all these activities in Massachusetts.[2]

In 1972, Willis and API entered an exclusive patent licensing agreement. Essentially this agreement obligated API to manufacture and market Willis' invention, a device designed to permit the automated retrieval of garments which had been laundered or cleaned. At API's direction, Willis performed two marketing surveys regarding this product. Although portions of the survey were conducted in other states, Massachusetts was his "base of operations". API has allegedly breached the agreement by failing to manufacture the item and failing to seek a patent on an improvement to the device. Willis also claims that BOWE induced API to breach the agreement.

BOWE is API's sole stockholder. The two corporations have had significant intermingling of corporate officers and directors. BOWE has on two occasions appointed officers of API without approval of API's board of directors. By agreement, BOWE undertook responsibility for all the liabilities of API, including the contract with Mr. Willis. BOWE undertook direct responsibility for some aspects of the development of Willis' invention.

*Discussion.*

### I. *Personal Jurisdiction.*

 In a diversity action, the law of the forum state determines the amenability of a nonresident to suit. *Kahn Paper Co., Inc. v. Crosby,* 476 F.Supp. 1011 (D.Mass.1979), citing *Caso v. Lafayette Radio Electronics Corp.,* 370 F.2d 707 (1st Cir. 1966). Thus, a preliminary discussion of the scope of the Massachusetts long-arm statute, M.G.L. c. 223A, § 3 is required. In *"Automatic" Sprinkler Corp. v. Seneca Foods Corp.,* 361

---

1. The complaint fails to disclose where API has its principal place of business. For the purposes of this motion, I will assume that it is someplace other than Massachusetts.

2. Although Massachusetts was his base of operation, Willis sold products throughout the United States.

Mass. 441, 280 N.E.2d 423, the Supreme Judicial Court stated that this statute "allowed assertion of jurisdiction over the person to the limits allowed by the United States Constitution". In a subsequent opinion, however, the Court explained that:

> M.G.L. c. 223A, § 3 asserts jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statute has been established. Although presented with jurisdictional facts sufficient to survive due process scrutiny a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites. *Good Hope Industries v. Ryder Scott Co.*, 378 Mass. 1, 389 N.E.2d 76, 80 (1979)

The statute therefore imposes an additional set of constraints on a court's assertion of *in personam* jurisdiction.

### A. *API.*

■ In the instant case there is no question that the assertion of jurisdiction over API would comport with due process. Through its agent Willis, API has had extensive and ongoing contacts with the Commonwealth. Willis has solicited customers, conducted seminars, supervised the installation of a BOWE system and prepared layouts for clients. He has engaged in such activities since 1968. Where a party has had such extensive and ongoing contracts with a forum, it is constitutionally permissible for a court to exercise *in personam* jurisdiction. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

The issue here, however, is whether the statutory prerequisite has been satisfied. The pertinent section of the statute provides:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent as to a cause of action in law or equity *arising from* the person's
>> (a) transacting any business in the Commonwealth.

(emphasis supplied)

Thus the questions presented are: (1) whether Willis' performance of a marketing survey, using Massachusetts as a base of operation for a product which was neither manufactured nor sold in Massachusetts constitutes "transacting business in the Commonwealth"; and (2) whether the cause of action, i.e., the breach of the patent licensing agreement, arises out of that transaction of business.

■ In deciding the first question, I am guided by our Court of Appeals' admonition that the "transacting any business clause" should be construed broadly. *Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 193–194 (1st Cir. 1980). Willis argues that the marketing activities he performed at API's direction and on its behalf constituted transacting business in the Commonwealth. According to the materials before me, not all of the marketing survey was conducted in Massachusetts although Massachusetts was the "base of operation". Nonetheless, Willis was paid by API to perform these activities, the activities were similar in nature to those he performed pursuant to his employment contract, and the survey was conducted for the purpose of selling the invention. I find this to be the type of "purposeful activity" required to support a finding that in conducting the survey Willis transacted business in the Commonwealth. *Ross v. Ross*, 371 Mass. 439, 358 N.E.2d 437 (1976).

■ The more difficult question is whether the cause of action "arises from" this transaction of business. To date neither the Supreme Judicial Court nor our Court of Appeals has had occasion to delineate the scope of this term with respect to the Massachusetts long-arm statute. In *Nova Biomedical, supra*, the Court of Appeals expressly declined to consider the issue. In considering the question with regard to the Puerto Rico statute, however, they held that the district court lacked personal jurisdiction where the only contacts that a New Jersey corporation had with Puerto Rico were its ownership of a Puerto Rican corporation and its obtaining a Puerto Rican trademark. Those contacts were

insufficient to confer personal jurisdiction. *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902 (1st Cir. 1980). Significantly, the court stated:

> Although [obtaining the trademark] was an affirmative act and a purposeful availment of the protection of Puerto Rico's laws, it does not bear any relationship to the cause of action. There is no logical relationship between the ... trademark and the operations of the [subsidiary corporation] that allegedly injured plaintiff. 619 F.2d at 906.

More recently the Court of Appeals for the Fifth Circuit extensively reviewed this issue in examining the Texas long-arm statute. In *Prejean v. Sonatrach, Inc. et al.,* 652 F.2d 1260 (5th Cir. 1981), two widows brought a wrongful death suit. The decedents were employed by a Texas engineering firm which had contracted with Sonatrach, the Algerian National Oil Co., to provide technical assistance. While performing duties in Algeria pursuant to the contract, an aircraft manufactured by defendant Beech Aircraft Corp. owned by defendant Air Algerie and chartered by Sonatrach crashed and killed the engineers. The district court dismissed all three defendants for lack of personal jurisdiction. Significant for our purposes was the court's discussion of defendants Beech and Sonatrach. The court found that although Beech (the plane manufacturer) carried on substantial activities in Texas, those activities "have not been shown to have the slightest causal relationship with the decedents' wrongful death.... Because the tort did not occur in Texas and the cause of action did not arise from Beech's activities in Texas the requirements of the Texas statute were not met." 652 F.2d at 1270. The Court of Appeals reversed and remanded the case to the district court for additional discovery to determine two questions: (1) whether Sonatrach had in fact contracted with the Texas firm, and if so, whether there was a "logical relationship" between the wrongful death action and the contract; and (2) whether Sonatrach had chartered the plane, and if so, whether there was a logical relationship between that allegedly negligent act and the wrongful death action.

This suit is for breach of a patent licensing agreement. The gravamen of the complaint is the failure to manufacture and market Willis' invention and the failure to acquire an improvement patent on the mechanism. Nothing in the agreement obligated him or API to perform any activity in Massachusetts. Moreover, the alleged breach occurred entirely outside of Massachusetts. Willis argues, however, that because it was contemplated that he would provide assistance and carry out various solicitations and marketing activities in behalf of defendant in promoting the invention, the contract was in part performed in Massachusetts and the cause of action arises out of defendant's transacting business in Massachusetts.

Applying the liberal approach of *Nova Biomedical, supra,* to a very close question, I find that the cause of action does arise from the transaction of business in the Commonwealth. API agreed to manufacture and market the Willis invention. Pursuant to its obligation to market the product, it commissioned the market survey. The survey was therefore conducted in furtherance of its contractual obligations. Since part of those duties was discharged within the Commonwealth, API has in fact transacted business here in furtherance of its contract duties. The contract thus has a sufficient nexus with this forum to allow this court to entertain a suit for its alleged breach. Accordingly, API's motion to dismiss is DENIED.

### B. *BOWE.*

Defendant BOWE's motion presents a different set of issues. Willis concedes that BOWE has not directly transacted business in the Commonwealth. He argues, however, that because BOWE so clearly controlled API's activities, particularly concerning this contract, it is liable for API's acts and thus subject to this court's jurisdiction.

As a general principle, corporations are to be regarded as separate from each other and their respective stockholders. *Marsch v. Southern New England R. R.,* 230 Mass. 483, 120 N.E. 120 (1918). However, a corpo-

ration may become subject to criminal or civil liability on principles of agency or causation. See *Commonwealth v. Abbott Engr., Inc.*, 351 Mass. 568, 222 N.E.2d 862 (1967). The Supreme Judicial Court has held that the fiction of corporate separateness should be disregarded:

> a) when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship, or b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting. *My Bread Baking Co. v. Cumberland Farms*, 353 Mass. 614, 618–619, 233 N.E.2d 748 (1968)

In *My Bread*, the court held that where the evidence supported an inference that the store managers of various retail outlets followed the orders and acted as agents of the principal corporation, the corporation could be held liable for the torts of retail stores even though the principal corporation did not own stock in any of the affiliates.

In the instant case, the deposition evidence would even more strongly support an inference that BOWE has exercised significant control over API's activities. BOWE is API's sole stockholder. The two corporations have had significant intermingling of corporate officers and directors. There is evidence that BOWE has on two occasions appointed officers of API without the approval of its board of directors. By agreement BOWE assumed the responsibility for the liabilities of API, including the contract with Mr. Willis. BOWE was directly involved in the development of the Willis invention, including assuming sole responsibility for various aspects of the development process. Under these circumstances, I find that BOWE has actively or directly participated in the affairs of API and has exercised such control of its activities to warrant disregarding the fiction of corpo-

rate separateness. Accordingly, BOWE's motion to dismiss is DENIED.

## II. *Motion to Transfer.*

Plaintiff has chosen to bring suit in this district and ordinarily plaintiff's choice of forum will not be disturbed. *Richards v. Upjohn Co.*, 406 F.Supp. 405 (E.D.Mich. 1976). Defendant has pointed to no specific hardship. It simply notes that its home office, records, and potential witnesses are in New York. The distance to New York is not sufficient to justify a transfer of this case. Accordingly, the motion to transfer is DENIED.

*Conclusion.*

The motions of API and BOWE to dismiss for lack of personal jurisdiction are DENIED. Their motion to transfer is DENIED.