MARCOS Y. KLEINERMAN *vs.* PHILLIP H. MORSE & others.[1]

No. 87-1261.

Worcester. October 17, 1988. — January 26, 1989.

Present: KASS, CUTTER, & SMITH, JJ.

*Jurisdiction,* Nonresident, Long-arm statute.

An out-of-State corporation that exercised persistent and persuasive managerial control over its Massachusetts subsidary transacted business in the Commonwealth within the meaning of the long arm statute, G. L. c. 223A, § 3(*a*). [822-823]

The record of a civil action demonstrated a sufficient level of activity in Massachusetts by an out-of-State corporation to provide a basis for the exercise of jurisdiction over the corporation under G. L. c. 223A, § 3(*a*). [823]

A complaint alleged sufficient facts demonstrating active managerial conduct in Massachusetts by the defendant as president acting on behalf of both an out-of-State corporation and its Massachusetts subsidary to warrant the assertion of personal jurisdiction over the individual defendant and the out-of-State corporation pursuant to cl. (*c*) or cl. (*d*) of G. L. c. 223A, § 3, for causing tortious injury by an act or omission in or outside the Commonwealth. [823-824]

A corporate officer, defendant in a civil action, inappropriately raised an affirmative defense in opposing the Superior Court's assertion of personal jurisdiction over him. [824-825]

In a civil action the judge properly allowed the motions to dismiss filed by two out-of-State defendants, where the complaint failed to allege facts sufficient to support assertion of personal jurisdiction over them. [825]

CIVIL ACTION commenced in the Superior Court Department on April 28, 1986.

A motion to dismiss was heard by *Mel L. Greenberg,* J., and entry of judgment was ordered by *William J. McManus,* J., sitting under statutory authority.

[1] North American Instrument Corporation, John C. Lemery, and William E. Philion.

*Marcos Y. Kleinerman,* pro se.

*John O. Mirick* for the defendants.

KASS, J. For failure to establish personal jurisdiction over a New York corporation and three residents of New York, a judge of the Superior Court dismissed the complaint against those defendants.[2] See Mass.R.Civ.P. 12(b)(2), 365 Mass. 755 (1974). We conclude that application of the Massachusetts long arm statute, G. L. c. 223A, § 3(*a*), (*c*), & (*d*), places two of those defendants under the jurisdiction of Massachusetts courts.

Having done so recently in *Heins* v. *Wilhelm Loh Wetzlar Optical Mach. GmbH & Co. KG, ante* 14 (1988), we need not elaborate on the analytical ingredients of a long arm jurisdiction case. We may plunge directly into an inquiry: (1) whether the facts fall into any of the criteria set up by G. L. c. 223A, § 3, to impose long arm jurisdiction; and (2) whether each of the defendants had "minimum contacts" with Massachusetts which "are, when balanced with other factors, sufficient to permit the assertion of specific personal jurisdiction . . . ." *Id.* at 27.[3] The burden of establishing facts sufficient to fend off a motion to dismiss for lack of jurisdiction over the person is on the plaintiff. *Morrill* v. *Tong,* 390 Mass. 120, 129 (1983). *Nichols Associates* v. *Starr,* 4 Mass. App. Ct. 91, 93 (1976). *A.J. Cunningham Packing Corp.* v. *Florence Beef Co.,* 529 F. Supp. 515, 516 (D. Mass. 1982). Thus far the

[2] An action is still pending against another defendant named in the complaint, North American Fiber Optics Corporation. There is no dispute as to jurisdiction over that defendant.

[3] Other relatively recent cases applying long arm jurisdiction and minimum contact analysis include *"Automatic" Sprinkler Corp. of America* v. *Seneca Foods Corp.,* 361 Mass. 441, 443-446 (1972); *Good Hope Indus.* v. *Ryder Scott Co.,* 378 Mass. 1, 6-12 (1979); *Balloon Bouquets, Inc.* v. *Balloon Telegram Delivery, Inc.,* 18 Mass. App. Ct. 935 (1984); *Gunner* v. *Elmwood Dodge, Inc.,* 24 Mass. App. Ct. 96 (1987); *Salter* v. *Lawn,* 294 F. Supp. 882 (D. Mass. 1968); *A. J. Cunningham Packing Corp.* v. *Florence Beef Co.,* 529 F. Supp. 515, 518-519 (D. Mass. 1982); *Willis* v. *American Permac, Inc.,* 541 F. Supp. 118, 119-121 (D. Mass. 1982); *Johnson Creative Arts, Inc.* v. *Wool Masters, Inc.,* 573 F. Supp. 1106, 1109-1111 (D. Mass. 1983); *Kehoe* v. *Boat Sara T., Inc.,* 653 F. Supp. 853 (D. Mass. 1987).

defendants have not answered, and we take as true the facts set forth in the complaint[4] and an affidavit subsequently filed by Kleinerman.[5]

By written agreement dated February 29, 1984 (the date on which it was organized), North American Fiber Optics Corporation ("NAMFO") employed the plaintiff Marcos Kleinerman as its vice president and director of research and development. Although incorporated under New York law, NAMFO's base of operations was at 100 Grove Street, Worcester. NAMFO was the corporate offspring of another New York corporation, North American Instrument Corporation (NAMIC), which held

---

[4] A determination of jurisdiction — or the lack of it — may rest on the facts alleged in the complaint. See *Jones* v. *Freeman*, 400 F.2d 383, 387 (8th Cir. 1968); *Massachusetts* v. *United States Veterans Admn.*, 541 F.2d 119, 122 (1st Cir. 1976); *Hildebrand* v. *Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir. 1980); *Simon* v. *United States*, 644 F.2d 490, 498 (5th Cir. 1981). In aid of the task of determining jurisdiction over a person, a court may receive and consider affidavits. *Marine Midland Bank, N.A.* v. *Miller*, 664 F.2d 899, 904 (2d Cir. 1981). *Nelson* v. *Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983), cert. denied 465 U.S. 1024 (1984). 5 Wright & Miller, Federal Practice & Procedure § 1351 & n.34 (1969 & Supp. 1987). In at least one case, affidavits to shore up allegations of jurisdictional facts seem to have been regarded as mandatory. *Time Share Vacation Club* v. *Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 & n.9 (3d Cir. 1984). All in all, there is procedural leeway. Courts need not act on the documents and may conduct an evidentiary hearing. See *Marine Midland Bank, N.A.* v. *Miller*, 664 F.2d at 904.

[5] There is some question whether the affidavit in which Kleinerman enlarges upon the jurisdictional facts alleged in his complaint was timely filed. Kleinerman asserts, and defense counsel seems to agree, that at the hearing on the motion to dismiss the motion judge gave Kleinerman twenty days for a response. Responsive material in the form of a memorandum and affidavits would have been due on July 10, 1986. The judge's memorandum of decision dismissing the complaint is dated July 8, 1986, i.e., two days before Kleinerman was supposed to log in with a response. Kleinerman received notice of the dismissal on July 10, the due date for his responsive material. That day, a Thursday, Kleinerman served the responsive material. See Mass.R.Civ.P. 5(a), (b), & (d), 387 Mass. 1221 (1983), and 365 Mass. 745-746 (1974). His responsive material was docketed the following Monday, July 14. Kleinerman's response was timely served and we may consider it. The motion judge had an opportunity to consider Kleinerman's response when Kleinerman moved to vacate the order of dismissal on the ground that it was premature and had been entered without consideration of the responsive material.

at least eighty percent of the capital stock of NAMFO. Phillip H. Morse, the president of NAMIC, became the president of the subsidiary, NAMFO. There was evidence that Morse made the major staffing and major policy decisions at NAMFO. What Kleinerman brought to the NAMFO venture was knowledge of fiber optics science and an inventory of product ideas for fiber optics measuring devices. Those products, the parties hoped, would fit into the product mix which NAMIC was engaged in marketing.

In August of 1984, Morse, after visiting NAMFO in Worcester, was still "impressed and gratified to see the operation and the progress that has been made to date." Relations were cordial. Morse admired Kleinerman's selection of the wine at dinner. The honeymoon, however, did not endure. Morse placed Fredrick W. Hetzel, the vice president for research and product development at NAMIC, in charge of the Massachusetts operation. Kleinerman bridled at what he thought to be unreasonable interference with his research and development operations. He chafed about what he deemed improvident — or worse — siphoning of resources from NAMFO. On February 12, 1985, not quite a full year after the parent had spawned the subsidiary, NAMIC dissolved NAMFO and wound up its operations in Massachusetts.

Kleinerman brought this action, alleging breach of his employment contract, wrongful interference with the contractual rights it established, and misrepresentation.

1. *Facts which fall within G. L. c. 223A, § 3.* We examine first whether there is a basis for exercising jurisdiction under clause (*a*) of § 3 (as appearing in St. 1968, c. 760), i.e., "transacting any business in this commonwealth." The activities in Massachusetts of NAMIC, the parent corporation, went well beyond isolated incidents such as placing an advertisement, receiving several telephone conversations in connection with a particular transaction, and engaging in some correspondence. Compare *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. 149, 153-157 (1978); *Accutest Corp.* v. *Accu Test Systems, Inc*, 532 F. Supp. 416, 419-421 (D. Mass. 1982). It established and directed a division whose operational ac-

tivities were entirely in Massachusetts. NAMIC executives made decisions about budget, staffing, and the scope of activities. The plenary control which NAMIC exerted over NAMFO is dramatically illustrated by NAMIC's decision to fold up NAMFO at its will and to take over its functions.

Significant exercise of control by an out-of-State parent corporation over a subsidiary and significant intermingling of officers and directors between parent and subsidiary have served to establish jurisdiction in the State where the subsidiary is conducting its business operations. *Willis* v. *American Permac, Inc.*, 541 F. Supp. 118, 122 (D. Mass. 1982). Cf. *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 618-619 (1968). Running the operations of a subsidiary in Massachusetts constitutes a breadth of business activity that necessarily involves exercise of the privilege of conducting business here. *Hanson* v. *Denckla*, 357 U.S. 235, 253 (1958). Compare *Good Hope Indus.* v. *Ryder Scott Co.*, 378 Mass. 1, 6-12 (1979); *Balloon Bouquets, Inc.* v. *Balloon Telegram Delivery, Inc.*, 18 Mass. App. Ct. 935, 935-936 (1984); *Gunner* v. *Elmwood Dodge, Inc.*, 24 Mass. App. Ct. 96, 100-101 (1987). By contrast, ownership alone of the controlling stock of a subsidiary does not confer jurisdiction over an out-of-State parent corporation if the parent does not exercise control over the activities of the subsidiary. *Escude Cruz* v. *Ortho Pharmaceutical Corp.*, 619 F.2d 902, 905 (lst Cir. 1980).

Business conduct and control as persistent and pervasive as that of NAMIC in relation to NAMFO obviates the need (found in many of the other cases) to itemize and weigh small acts to decide whether they add up to transacting business in the Commonwealth. Were that required, the record offers evidence of correspondence, memoranda, and visits of inspection and supervision which are at least up to the level of the activity described in the *Good Hope* and *Balloon Bouquets* cases.

Kleinerman also has a jurisdictional hold under G. L. c. 223A, § 3(*c*), as appearing in St. 1968, c. 760, which makes acts "causing tortious injury by an act or omission in this commonwealth" a basis for extending the long arm. Although artless, Kleinerman's complaint alleges that Morse, on behalf

of NAMIC, engaged in misrepresentations which seduced him into signing up with NAMFO and then wrongfully dispatched NAMIC's minions to Massachusetts to pluck NAMFO bare. The complaint does not delineate clearly whether the underlying misrepresentations were made in Massachusetts or at NAMIC's home base in New York or from New York. If the latter, i.e., "causing tortious injury in this commonwealth by an act or omission outside this commonwealth," G. L. c. 223A, § 3(*d*), as appearing in St. 1968, c. 760, comes into play.

Morse, at all times, was the principal actor on behalf of NAMIC. He was the president of the Massachusetts subsidiary and his title was not just an honorific. Major directives flowed from Morse and major controversies were bucked up to him. To fulfil his duties he made inspectional visits. Although jurisdiction over a corporation does not automatically secure jurisdiction over its officers, *Escude Cruz* v. *Ortho Pharmaceutical Corp.*, 619 F.2d at 906,[6] active entreprenurial or managerial conduct in the State where jurisdiction is asserted will cause jurisdiction to attach. *Johnson Creative Arts, Inc.* v. *Wool Masters, Inc.*, 573 F. Supp. 1106, 1111 (D. Mass. 1983) (president planned the incorporation, composed and mailed the solicitation letter, and received telephone orders from Massachusetts retailers).

Considering that the long arm statute is broadly construed, see *Hahn* v. *Vermont Law School*, 698 F.2d 48, 50 (1st Cir. 1983), we have no difficulty in deciding that NAMIC and Morse are within its reach. Our discussion of the scope of NAMIC's and Morse's activities in connection with the statutory test touches on sufficient minimum contacts to meet the constitutional test.

2. *Agent acting for disclosed principal.* Morse has suggested he may be absolved from liability because, as president of

---

[6] See also *Hahn* v. *Vermont Law School*, 698 F.2d 48, 52 (1st Cir. 1983); *Arkansas Rice Growers Coop. Assn.* v. *Alchemy Indus.*, 797 F.2d 565, 574 (8th Cir. 1986); *Alvarado-Morales* v. *Digital Equip. Corp.*, 843 F.2d 613, 617 (1st Cir. 1988); *Beaver Builders* v. *Schnip Bldg.*, 622 F. Supp. 1051, 1054 & n.1 (D. Mass. 1985); *Lex Computer & Management Corp.* v. *Eslinger & Pelton, P.C.*, 676 F. Supp. 399, 405 (D. N.H. 1987). Cf. *Shaffer* v. *Heitner*, 433 U.S. 186, 213-216 (1977).

NAMIC and NAMFO, he is the agent of disclosed principals and is not personally liable. See *Cass* v. *Lord*, 236 Mass. 430, 432 (1920); *Porshin* v. *Snider*, 349 Mass. 653, 655 (1965); *Cort* v. *Bristol-Myers Co.*, 385 Mass. 300, 305 n.5 (1982). Whatever the application of the agent for a disclosed principal doctrine to Morse's liability when the facts are fully developed, the doctrine has no application to the question of jurisdiction over Morse. The purpose of jurisdiction is to place the question of Morse's liability before a forum. It would be premature at the outset to assume that Morse was at all times acting in the capacity of an agent.

3. *Jurisdiction over lesser officers of NAMIC and NAMFO*. Kleinerman also seeks to assert jurisdiction in Massachusetts over John Lemery, a resident of New York identified as "legal counsel" for NAMIC and also a director and the secretary of NAMFO. Apart from twice attending and voting, so it was alleged, at NAMFO directors' meetings in Massachusetts, there is no allegation of conduct by Lemery in Massachusetts bearing on Kleinerman's claim. There is similarly slender contact between Massachusetts and William Philion, a resident of New York who also served on the NAMFO board of directors. Philion is said to have attended one meeting of the NAMFO board of directors in Massachusetts. Concerning Lemery and Philion, the judge could plausibly arrive at the conclusion that they had not availed themselves purposefully of the privilege of conducting business in Massachusetts. *Hanson* v. *Denckla*, 357 U.S. at 253. See the cases collected in note 3. If the facts as developed show that Lemery and Philion participated in activities having a relevant and significant effect in Massachusetts, they may be added as parties on appropriate motion at a later stage of the case.

As to Lemery and Philion, the judgment of dismissal is affirmed. As to Morse and NAMIC, the judgment of dismissal is vacated and the case is remanded to the Superior Court for further proceedings.

*So ordered.*