Louis **GIULIANO** and Patricia Lett, Plaintiffs,

v.

**NATIONS TITLE, INC., Nations Holding Group, and Nations Title Insurance of New York, Inc., Defendants.**

**Civil Action No. 96–10190–WGY.**

United States District Court,
D. Massachusetts.

Sept. 10, 1996.

---

of contract, unfair and deceptive trade practices, and conversion against Nations Title Insurance of New York ("Title–NY"), Nations Title Insurance ("Title"), and Nations Holding Group ("Holding") (collectively, "the Nations parties"). Giuliano and Lett are Rhode Island residents. Title–NY is a corporation "organized under" New York law with its principal place of business in Kansas. Title is a corporation organized under Kansas law with its principal place of business in Kansas. Holding is a corporation organized under California law with its principal place of business in California.[1] Title–NY has been at all relevant times and remains today wholly owned by Title. Title was wholly owned by Holding from January 1, 1994, to April 1, 1996.

This Court has previously dismissed or granted summary judgment for the Nations parties on certain other counts brought by Lett and Giuliano. Holding now moves for dismissal of the remaining counts against it for lack of personal jurisdiction under Fed. R.Civ.P. 12(b)(2).

## II. Background

Upon the present record, the Court finds the following jurisdictional facts: Holding and Title are holding companies that do no business other than owning other companies, and do not insure property (or anything else). Title–NY is an insurance company. As indicated above, Title–NY is wholly owned by Title. Holding purchased Title on January 1, 1994. Prior to that time, Title had been called "TRW Title Insurance" ("TRW"), and Title–NY had been called "TRW Title Insurance of New York" ("TRW–NY").[2] Holding sold Title to Fidelity National Financial, Inc. on April 1, 1996. Chris Likens ("Likens") was vice-president

Steven J. Drew, Law Offices of Steven J. Drew, PC, Boston, MA, for Louis Giuliano, Patricia Lett.

John H. Henn, Foley, Hoag & Eliot, Boston, MA, for Nations Title, Inc.

John H. Henn, Stephen B. Deutsch, Foley, Hoag & Eliot, Boston, MA, for Nations Holding Group, Inc., Nations Title Insurance of New York, Inc.

*MEMORANDUM AND ORDER ON THE MOTION BY DEFENDANT NATIONS HOLDING GROUP TO DISMISS FOR LACK OF PERSONAL JURISDICTION*

YOUNG, District Judge.

## I. Introduction

Louis Giuliano ("Giuliano") and Patricia Lett ("Lett") have filed this action for breach

---

1. The information regarding the Nations parties' identities and business relations comes from their pleadings and affidavits. Giuliano and Lett originally claimed that the Nations parties all had their principal places of business in Boston, but have not subsequently challenged the Nations parties' assertions, supported by affidavits from company officers, to the contrary. In general, Giuliano and Lett make no detailed allegations regarding the corporate structures of or relations among the Nations parties.

2. Chris Likens, the vice-president of both Title and Title–NY, indicates in his affidavit of Febru-

of Title and Title–NY since at least 1989. Sometime between April 1, 1996 and May 6, 1996, Likens ceased to be an employee of Title, apparently on amicable terms. (It is not clear if he is still an employee of Title–NY.) Likens was not an employee of Holding. Richard Alexander ("Alexander") has been president of Title and Title–NY since 1989, and was vice-president of Holding during the time Holding owned Title. Henri J. Van Hirtum ("Van Hirtum") is president and CEO of Holding. During the time Holding owned Title, Van Hirtum was also chairman of Title and a director of Title–NY. Alexander and Van Hirtum thus held executive positions at all three companies from 1994 to 1996. Since the sale of Title, Van Hirtum has held no position at Title or Title–NY. Whether Alexander retains any position at Holding is not clear from the pleadings and affidavits.

In 1990, either TRW or TRW–NY acquired title to property previously owned by Lett. Giuliano and Lett claim in their suit that Lett was to receive an interest in the property, and that TRW and TRW–NY did not live up to their agreement. The dispute, therefore, arose before Holding's purchase of Title, and most of Giuliano and Lett's negotiations and discussions over this matter were with Likens, who was not a Holding employee. Certain portions of the dispute, however, involve Holding or Holding employees. In late 1994, Giuliano negotiated with Likens a loan of $1,600,000.00. Giuliano says the loan was to develop the property in dispute, whereas the Nations parties say he was short of cash. In any event, Alexander prohibited Likens from providing the money, and Van Hirtum so informed Giuliano by letter (sent to him in Rhode Island). Lett assigned her interest to Giuliano on December 20, 1994. By the same document, Lett is alleged by the Nations parties to have released them from any liability to her, but Lett claims that this document was fraudulently altered by the Nations parties after she signed it. No Holding employee, including Van Hirtum or

Alexander, traveled to Massachusetts on business or initiated any other business contact within the Commonwealth while Holding owned Title.

Giuliano and Lett have submitted three letters sent by Van Hirtum from California to Giuliano in Rhode Island on Holding stationery in which Van Hirtum discusses the dispute. In these letters, he refers once to "the company" and once to "our Company" without identifying which company he is talking about, although in general he discusses the dispute as one between Title and Giuliano. Van Hirtum does not appear to distinguish between Title and Title–NY.

There are two mechanisms through which this Court could assert jurisdiction over Holding: directly, based on actions actually taken by Holding, or indirectly, by imputing the actions of its subsidiaries to Holding, otherwise known as "piercing the corporate veil."

### III.  Discussion

#### A.  Direct Contacts Analysis

■ "Ordinarily, courts respect the legal independence of a corporation and its subsidiary when determining if a court's jurisdiction over the offspring begets jurisdiction over the parent." *United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1091 (1st Cir.1992). *See also Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336–37, 45 S.Ct. 250, 251–52, 69 L.Ed. 634 (1925), *Donatelli v. National Hockey League*, 893 F.2d 459, 465 (1st Cir.1990). Holding's connections to Massachusetts are very slim. The company owned (at one remove) Title–NY, which does business in Massachusetts, for a year and a half. Other than that, Holding did no business and owned no property in Massachusetts. So long as the corporate veil remains intact, jurisdiction over Holding can be asserted only on the basis of its act of purchase and ownership, not on the basis of its subsidiaries' acts.

ary 10, 1996, that Title (rather than Title–NY) was previously called "TRW Title Insurance of New York". This statement appears to be a

careless error, reflecting the fact that the principals do not distinguish carefully between Title and Title–NY.

This Court has jurisdiction over Holding only if it is within the terms of Mass.Gen.L. ch. 223A, § 3, the Massachusetts long-arm statute. *Marino v. Hyatt Corporation,* 793 F.2d 427, 428 (1st Cir.1986). Giuliano and Lett argue that sections 3(c), (d), and (e) authorize jurisdiction. Under section 3(c), jurisdiction is proper over one "causing tortious injury by an act or omission in this Commonwealth." Neither Holding's purchase of Title nor its ownership for over eighteen months can be construed as "causing" any tort. Section 3(d) applies when the tort occurred outside the Commonwealth but caused injury within. In addition, section 3(d) requires that the party regularly conduct business in Massachusetts. Holding does not. Section 3(e) authorizes jurisdiction over a party that owns land in Massachusetts. Holding owns no land in Massachusetts; the property in dispute is owned by Title–NY.

Moreover, an assertion of personal jurisdiction over Holding based on Holding's own ties to Massachusetts would be unconstitutional. Due process requires that a party sued in Massachusetts have "minimum contacts" with the state such that the assertion of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 [1940]). This requirement necessitates that the cause of action be related to the defendant's contact. *Pleasant Street,* 960 F.2d at 1089. In the case at bar, the cause of action is related to the acts of Title and Title–NY, not to Holding's purchase and ownership of Title.

*B. Piercing the Corporate Veil*

■ "Significant exercise of control by an out-of-State parent corporation over a sub-sidiary and significant intermingling of officers and directors between parent and subsidiary have served to establish jurisdiction in the State where the subsidiary is conducting its business operations." *Kleinerman v. Morse,* 26 Mass.App.Ct. 819, 823, 533 N.E.2d 221 (1989) (citations omitted). Here, there was intermingling of corporate officers during the period in which Holding owned Title, and there is some evidence that Holding had considerable control over Title and Title–NY during the time that Holding owned Title. Massachusetts law, however, does not permit piercing the corporate veil in this instance.

■ Massachusetts permits disregard of the corporate form "only in rare situations." *Pleasant Street,* 960 F.2d at 1091. In general, "there is nothing fraudulent or against public policy in limiting one's liability by the appropriate use of corporate insulation." *Miller v. Honda Motor Co.,* 779 F.2d 769, 773 (1st Cir.1985) (applying Massachusetts law). The leading Massachusetts case is *My Bread Baking Co. v. Cumberland Farms, Inc.,* 353 Mass. 614, 233 N.E.2d 748 (1968) (Cutter, J.).[3] There the Supreme Judicial Court held that disregard of the corporate form is permissible

(a) when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship, or (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.

*Id.,* 233 N.E.2d at 752.

---

**3.** *My Bread,* like *Pepsi, infra,* is concerned with the liability of a parent for its subsidiary, not with jurisdiction over the parent. However, the law of veil-piercing appears to be the same in either case. *See Kleinerman,* 26 Mass.App.Ct. at 823, 533 N.E.2d 221 (citing cases piercing the veil for liability purposes in doing so for jurisdic-tional purposes), *Pleasant Street,* 960 F.2d at 1091 (stating that the same factors are relevant to the two inquiries in a federal question context); *Willis v. American Permac, Inc.,* 541 F.Supp. 118, 121 (D.Mass.1982) (same); 21 C.J.S. Courts § 47 (stating generally that the two inquiries are identical).

Under the *My Bread* rule, Holding may not here be haled into court based on the acts of Title. While there was indeed active and direct participation by the officers of Holding in the affairs of Title, there is no adequate showing of "pervasive control" as contemplated by the Court in *My Bread*. More importantly, there is no evidence that Holding's participation produced fraud or injustice. Virtually all the alleged fraud occurred before Holding purchased Title and, in any event, the Court's language does not suggest that the mere fact that a fraud is alleged (or proved) to have occurred during a time of participation by the parent in the affairs of its subsidiary can itself justify piercing of the veil. Instead, courts within this District have generally required a much more stringent showing "that piercing of the corporate veil is necessary to defeat fraud or wrong or to prevent gross inequity." *NCR Credit Corp. v. Underground Camera, Inc.*, 581 F.Supp. 609, 612 (D.Mass.1984) (Caffrey, C.J.) (citation omitted). The participation of the parent in the affairs of the subsidiary must thus itself be an element of the fraud—the participation must somehow make the fraud possible or further its accomplishment. There is no suggestion that Van Hirtum's and Alexander's dual position provided cover for or otherwise was an element in the continuing injuries alleged by Giuliano and Lett. Here, any alleged fraud can be defeated without piercing the veil.

Turning to the second prong of the *My Bread* test, Giuliano and Lett have argued that the corporate officers acted in an ambiguous capacity. The second prong, however, applies only when the various corporations are "engaged in a common enterprise." For instance, in *My Bread*, the defendants were numerous corporations each of which owned several retail dairy stores, an additional corporation that supplied the stores, and the family that controlled all the corporations. All the corporations had the same headquar-ters and used the same name. The court ruled that the corporations were a single enterprise, and disregarded the form. Such a standard makes good sense. Where the subsidiary is not a self-contained business operation, it may not have funds to cover the liabilities that are associated with the total endeavor of which it is a part. A corporate entity could then escape liability by limiting its presence in a state (or in the country) to undercapitalized "subsidiaries" provided with only minimum funds for their short-term operations. But where the subsidiary is engaged in a complete business endeavor, the general principles of limited liability are applicable. To hold parent corporations liable for their subsidiaries' acts would simply discourage certain types of investments. Holding is not an insurance company, and Title appears on the record to have been an independent business. The fact that it was sold a year and a half after its purchase suggests strongly that it was owned as an investment and was not integrated into any pre-existing business plan; Giuliano and Lett never argue that such an integration of operations existed.

In *Pepsi–Cola Metropolitan Bottling Co. v. Checkers, Inc.*, 754 F.2d 10 (1st Cir.1985), the First Circuit listed nine factors relevant to the decision to hold parents liable for their subsidiaries' actions: [4]

[1] insufficient capitalization for purposes of the corporate undertaking, [2] nonobservance of corporate formalities, [3] nonpayment of dividends, [4] insolvency of the corporation at the time of the litigated transaction, [5] siphoning of corporate funds by the dominant shareholders, [6] nonfunctioning of officers and directors other than the shareholders, [7] absence of corporate records, [8] use of the corporation for transactions of the dominant shareholders, and [9] use of the corporation in promoting fraud.

*Id.* at 16 (citations omitted). In this case, factors 2 and 6 are implicated. The primary officers of Title are those of Holding, and Likens, the vice-president of Title who dealt

---

**4.** Some of these factors were gleaned from cases in other jurisdictions, but the court states that they are relevant under Massachusetts law.

primarily with Giuliano, was overruled by Van Hirtum and Alexander when at one point he was negotiating with Giuliano to provide the latter with a loan. Similarly, Van Hirtum wrote letters regarding the affairs of Title on Holding stationery.

The First Circuit in *Pepsi* amplifies the concern of the Massachusetts Supreme Judicial Court in *My Bread* with cases of active fraud or integration into the parent's business, but the court does not say how many factors are necessary to justify piercing the corporate veil. Here, however, there are no allegations of improper transfers of funds after Title's purchase (such as found in factors 1, 3, 4, and 5), that Title was dissolved as a separate entity (see, *e.g.*, factors 7 and 8), or that confusion of authority was used to defraud Giuliano and Lett (factor 9). *Pepsi* would seem to require more.

### IV. Conclusion

For the reasons stated above, Holding's Motion to Dismiss for lack of personal jurisdiction is *ALLOWED.*