**STEEL WAREHOUSE OF WISCONSIN, INC. and Steel Warehouse Co., Inc., Plaintiffs–Appellants,**

**v.**

**Howard H. LEACH and Henry C. McMicking, Defendants–Appellees.**

**No. 97–3854.**

United States Court of Appeals, Seventh Circuit.

Argued May 13, 1998.

Decided Sept. 2, 1998.

As Amended on Denial of Rehearing and Suggestion for Rehearing En Banc Oct. 13, 1998.

Charles R. Watkins (argued), Susman, Buehler & Watkins, Chicago, IL, Timothy J. Storm, Storm & Associates, Chicago, IL, for Plaintiffs–Appellants.

Jeffrey O. Davis (argued), Quarles & Brady, Milwaukee, WI, for Defendants–Appellees.

Before RIPPLE, KANNE, and EVANS, Circuit Judges.

KANNE, Circuit Judge.

Steel Warehouse of Wisconsin, Inc. and Steel Warehouse Co., Inc. (collectively "Steel Warehouse"), filed an action in the District Court for the Eastern District of Wisconsin alleging that defendants Howard Leach and Henry McMicking, former members of the Board of Directors for Cortec Industries, Inc., a now insolvent corporation, caused or permitted false, incomplete, or misleading financial statements to be given to Steel Warehouse to induce it to continue to supply steel products and extend credit to the corporation. The claims against Leach and McMicking are based on breach of fiduciary duty, common law fraud, negligent misrepresentation, and statutory fraudulent misrepresentation. According to the complaint, Leach and McMicking knew of Cortec's insolvency, knew that its financial statements were false, and knew, or in the exercise of due care should have known or were reckless in not knowing, that Cortec was supplying those statements to Steel Warehouse to induce it to extend credit to Cortec.

Cortec was a Delaware corporation headquartered in Brookfield, Wisconsin. Leach and McMicking's only contact with Wisconsin, the forum state, was their attendance at Board meetings. Although the record is somewhat unclear as to how many meetings Leach and McMicking attended in Wisconsin, the record does support their presence in Wisconsin on a number of occasions for Cor-

tec Board meetings. Leach and McMicking are both California citizens.

Leach and McMicking moved to dismiss the case for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2). The district court granted this motion on October 7, 1997. This appeal followed.

■ The determination of personal jurisdiction is a question we review *de novo*. *See Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir.1995), *cert. denied*, 518 U.S. 1004, 116 S.Ct. 2523, 135 L.Ed.2d 1047 (1996). The plaintiff has the burden of demonstrating the existence of personal jurisdiction over the defendants. *See McIlwee v. ADM Indus., Inc.*, 17 F.3d 222, 223 (7th Cir.1994). A federal district court exercising diversity jurisdiction has personal jurisdiction over a nonresident only if a court of the state in which it sits would have such jurisdiction. *See Wilson v. Humphreys Ltd.*, 916 F.2d 1239, 1243 (7th Cir.1990).

■ Wisconsin may exercise either general or specific personal jurisdiction over nonresident defendants. Specific jurisdiction refers to "jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction is proper when a defendant has "continuous and systematic general business contacts" with the forum. *Id.* at 416, 104 S.Ct. 1868. This type of jurisdiction allows a defendant to be amenable to suit within that forum regardless of the subject matter of the suit. Steel Warehouse has never alleged that Leach and McMicking have such continuous and systematic contacts with Wisconsin and in oral argument affirmatively waived any argument for general jurisdiction. We therefore focus on the exercise of specific jurisdiction.

■ Under Wisconsin law, the jurisdictional question has two components. First, the plaintiff must establish that the defendants come within the grasp of the Wisconsin long-arm statute. *See Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir.1996); *Lincoln v. Seawright*, 104 Wis.2d 4, 310 N.W.2d 596, 599 (1981); *Marsh v. Farm Bureau Mut. Ins. Co.*, 179 Wis.2d 42, 505 N.W.2d 162, 165 (1993). If the plaintiff is successful, the burden switches to the defendants to show that jurisdiction would violate due process. *See Logan Productions*, 103 F.3d at 52; *Lincoln*, 310 N.W.2d at 599. The parties in this case focus their attention on the due process question; we will therefore assume for the purpose of analysis that Leach and McMicking come within the grasp of the Wisconsin long-arm statute.

■ Due process requires that the defendants have "purposefully established minimum contacts within the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). "Crucial to the minimum contacts analysis is showing that the defendant should reasonably anticipate being haled into court [in the forum State] ... because the defendant has purposefully avail[ed] itself of the privilege of conducting activities there." *RAR Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir.1997) (quotations omitted). To satisfy due process, specific jurisdiction requires that the suit "arise out of" or "be related to" these minimum contacts with the forum state. *See Helicopteros*, 466 U.S. at 414 n. 8, 104 S.Ct. 1868; *RAR Inc.*, 107 F.3d at 1277. In the instant case, this requirement means that Steel Warehouse's claims must connect to Leach and McMicking's contact with Wisconsin, i.e. Steel Warehouse's claims must arise from or relate to Leach and McMicking's activities at the Wisconsin Board meetings.

■ As Leach and McMicking demonstrate, Steel Warehouse has not sufficiently alleged the requisite connection between their claims and Leach and McMicking's attendance at Wisconsin Board meetings. Nothing in the complaint alleges that the defendants' acts or omissions occurred in Wisconsin, nor does the supplemental information included in Steel Warehouse's response to the defendants' motion to dismiss indicate that the actions or omissions which give rise to the allegations in the complaint occurred in Wisconsin.

Although the complaint alleges that the defendants "attended Board meetings at which the financial condition of Cortec was discussed and analyzed," the complaint does not allege that these meetings took place in Wisconsin. Additionally, while Steel Warehouse relies on the deposition excerpts attached to their response to the motion to dismiss, these excerpts are unhelpful because they fail to establish the connection with Wisconsin as well. Though both Leach and McMicking admit to having attended Cortec Board meetings in Wisconsin, they also attended Cortec Board meetings in Illinois. By alleging only that the defendants attended "Board meetings," without specifying where these meeting took place or the content of the meetings that might support their claims, Steel Warehouse has not established the requisite connection between the defendants' activities and the forum. While a complaint need not include facts alleging personal jurisdiction, see Turnock v. Cope, 816 F.2d 332, 333 (7th Cir.1987), a plaintiff bears the burden of establishing that the Court may exercise personal jurisdiction over the defendants once defendants move to dismiss for lack of personal jurisdiction. See McIlwee, 17 F.3d at 223. Steel Warehouse has failed to establish a prima facie case for personal jurisdiction, through either the allegations in its complaint or other evidence in the record, in response to the affidavits of Leach and McMicking supporting their motion to dismiss. Specific jurisdiction cannot lie without a connection between the defendants' Wisconsin activity and the claims alleged in the complaint.

For the foregoing reasons, we AFFIRM the district court's dismissal of this action for lack of personal jurisdiction.

RIPPLE, Circuit Judge, dissenting.

In my view, the fundamental misstep in the majority's analysis is its emphasis on the lack of presence of the defendants within the state of Wisconsin and on the precise activities that the defendants conducted while within the confines of the state. The appropriate focus of due process analysis [1] ought to be on the activity that the defendants caused the corporation to undertake within the state. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("Thus where the defendant 'deliberately' has engaged in significant activities within a State, ... or has created 'continuing obligations' between himself and residents of the forum, ... he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." (internal citations omitted)); Calder v. Jones, 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (holding that conduct in Florida had caused sufficient "effects" in California to justify jurisdiction in California); World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (stating that defendant corporations "carry on no activity whatsoever in Oklahoma" and holding that personal jurisdiction in Oklahoma was not proper).

The gravamen of the complaint is that the defendants, in their capacity as directors of a corporation whose principal place of doing business was in Wisconsin, caused the corporation to misrepresent certain financial information to its suppliers and therefore defrauded those suppliers. I think that it is quite compatible with contemporary notions of due process to conclude that it is fundamentally fair to require that the directors answer for such alleged conduct in the State of Wisconsin on the basis that their alleged activity caused harm within the state. See Pittsburgh Terminal Corp. v. Mid Allegheny Corp., 831 F.2d 522, 529 (4th Cir.1987) (stating that "a director of a corporation has created a continuing obligation between himself and the corporation, one which inures significantly to the director's benefit, not to mention that of the corporation" and holding therefore that jurisdiction in West Virginia over nonresident directors of West Virginia corporation was appropriate, even though

---

1. Although the typical inquiry would first be to inquire whether jurisdiction is appropriate under the Wisconsin long arm statute prior to addressing due process constraints, there does not appear to be any question here as to whether the Wisconsin long arm statute, see Wis. Stat. § 801.05, would permit jurisdiction if the actions of the defendants committed harm within the state. In addition, because Wisconsin interprets its statute to reach as far as due process will allow, see Zerbel v. H.L. Federman & Co., 48 Wis.2d 54, 179 N.W.2d 872, 875 (1970), I focus here on the due process requirements.

those directors were never actually in West Virginia); *Simmons v. Templeton*, 684 So.2d 529, 534 (La.Ct.App.1996) (holding that jurisdiction was proper in Louisiana over nonresident directors of a Louisiana corporation who had been in Louisiana only to attend a meeting to approve the transaction that was at issue in the underlying litigation; stating that "the transactions created fiduciary duties on the part of the nonresident directors flowing to Louisiana residents" and therefore that "the directors engaged in activities which created a continuing obligation between themselves and the Louisiana residents"). Indeed, even those cases that have denied jurisdiction in similar situations have noted that the result would have been different if it had been alleged that the defendants had participated in activities having a significant effect in the state. *See, e.g., Kleinerman v. Morse*, 26 Mass.App.Ct. 819, 533 N.E.2d 221, 225 (1989) (although declining to extend jurisdiction over nonresident directors at that point in the proceedings, stating that "[i]f the facts as developed show that [the directors] participated in activities having a relevant and significant effect in Massachusetts, they may be added as parties on appropriate motion at a later stage of the case").[2] Given that the defendants in this case were alleged to have caused harm in Wisconsin through their relationship with that state as directors overseeing a corporation with its principal place of business in Wisconsin, it is appropriate to exercise personal jurisdiction over them.

Moreover, we must also consider, as *World–Wide Volkswagen Corp.* counsels, the very significant interest of the State of Wisconsin in serving as the forum for a suit involving the conduct of directors of a corporation that has its principal place of doing

business in that state. *See World–Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S.Ct. 559.

Accordingly, I would reverse the judgment of the district court and hold that Wisconsin had an adequate specifically affiliating nexus with the directors and their alleged misfeasance to permit the exercise of personal jurisdiction over them.

---

**2.** As a final note, it also does not appear that the fiduciary shield doctrine would shield the defendants under Wisconsin law. The fiduciary shield is an equitable principle that is employed by courts to defeat personal jurisdiction over corporate officials when the only contacts those individuals have with the forum in question are made in their corporate capacity. *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir.1994) ("This doctrine ... denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." (internal citations omitted)), *cert. denied*, 514 U.S. 1111, 115 S.Ct. 1964, 131 L.Ed.2d 855 (1995). In light of various statements made by the Supreme Court and widespread criticism leveled against the doctrine, its

continued viability has been questioned by many courts. *See generally Mobil Oil Corp. v. Advanced Envtl. Recycling Techs., Inc.*, 833 F.Supp. 437, 440–43 (D.Del.1993) (reviewing fiduciary shield doctrine and considering, inter alia, the impact of the Supreme Court's decisions in *Calder* and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), on the doctrine). It appears that Wisconsin most likely would not consider the shield to bar jurisdiction in this case. *See Oxmans' Erwin Meat Co. v. Blacketer*, 86 Wis.2d 683, 273 N.W.2d 285, 289 (1979) ("We do not think it appropriate or required by the constitution that a corporate agent be shielded from personal jurisdiction if he, as agent of the corporation, commits a tortious act in the forum.").