Burnes, J.
The plaintiffs HarbourVest International Private Equity Partners II-Direct Fund, L.P. (“HarbourVest L.P.”) and Gregory Reyes (“Reyes”) (collectively “HarbourVest”) brought this action to recover damages arising out of the alleged misrepresentations and omissions surrounding a “stock swap” by defendants, Axent Technologies, Inc. (“Axent”), Axent’s Chairman and Chief Executive Officer, John C. Becker (“Becker”), and Gabriel A. Battista, John F. Burton, Timothy A. Davenport, Richard A. Lefebvre and Kevin A. Mc-Nerney, outside directors of Axent (the “Defendant Directors”). The plaintiffs allege claims for negligent *324 misrepresentation (against Axent and Becker) and violations of G.L.c. 110A, §410(a) (the Massachusetts Uniform Securities Act) (against all defendants) and G.L.c. 93A (against Axent). Axent and the Defendant Directors now move for summary judgment under Mass.R.Civ.P. 56 on the ground that this court does not have jurisdiction over this litigation.[3] The Defendant Directors say that the court does not have personal jurisdiction over them; Axent says that there was no offer to sell nor an offer to buy made and accepted in Massachusetts so as to bring the transaction within the Massachusetts Uniform Securities Act, G.L.c. 110A. Further, Axent alleges that Chapter 93A is inapplicable because the transaction did not occur primarily and substantially in Massachusetts. Lastly, say the defendants, the negligent misrepresentation claim asserted against Axent and Becker should be dismissed because Massachusetts is an inconvenient forum. For the reasons stated below, the defendants’ motion is DENIED.
BACKGROUND[4]
This case arises from a “stock swap” between Axent and the former shareholders of PassGo Technologies, Inc. (“PassGo”).[5] Pursuant to a Stock Exchange Agreement (“the Agreement”), dated March 29, 1999, PassGo’s shareholders, including the plaintiffs, transferred all of their PassGo stock to Axent in exchange for Axent common stock. At that time, Axent’s stock was publicly trading at $32.75 per share. Fewer than four business days after the closing, the plaintiffs contend that the defendants revealed information, previously undisclosed to HarbourVest, to the market. This information, says HarbourVest, caused Axent’s stock to drop to just over $8 per share. HarbourVest contends that within several days of the date that the plaintiffs transferred their shares to the defendants, the consideration they received dropped in value by approximately 70%. In the complaint, HarbourVest alleges principally that Axent and Becker made certain misrepresentations and omissions concerning Axent’s anticipated first quarter results before Axent acquired PassGo. HarbourVest says that it would not have agreed to close the transaction at the previously agreed upon price had Axent and Becker not made such misrepresentations and omissions regarding Axent’s anticipated first quarter results and future business outlook.
HarbourVest L.P. is a Delaware limited partnership with its principal place of business in Boston, Massachusetts.[6] Reyes is a citizen of California. From May 1997 through December 1998, HarbourVest invested in PassGo, a British corporation. PassGo, prior to the acquisition, had an operating division in Massachusetts. This division maintained offices in Boxboro, Massachusetts, employed Massachusetts residents, and also conducted business in Massachusetts.
Axent is a Delaware corporation with its principal place of business in Maryland. At all relevant times, Axent maintained an office in Waltham, Massachusetts.
■ The Defendant Directors were, at all relevant times, citizens of Virginia. Burton worked and resided in Massachusetts from 1977 to 1990. Davenport was employed and resided in Massachusetts from 1974 until 1980, from 1981 until 1985, and again from 1987 until 1993. Burton, Battista, Davenport, Lefebvre, and McNerney, at all relevant times, served in various official capacities for companies other than Axent who are registered to do business in Massachusetts.
Burton regularly travels to Massachusetts and transacts business here. During one visit within the past year, he met with PassGo’s managing director, Ofer Nemirovsky (“Nemirovsky”), at HarbourVest’s Boston office to discuss investment opportunities. In connection with his duties as a chief executive officer, chairman of the board, and director of two other companies registered to do business in Massachusetts, Battista has traveled twice to Massachusetts for business since January 1999.[7] Davenport has made several recent visits to Massachusetts in connection with his duties as president and chief executive officer of a company that regularly transacts business and employs salespeople in Massachusetts. McNerney, pursuant to his duties as managing partner of a company that has two offices in and is registered to do business in Massachusetts, has made several visits to Massachusetts in “recent years” to transact business. Lefebvre, on at least one occasion, traveled to Massachusetts to meet with Nemirovsky to discuss investment opportunities and the Axent/PassGo transaction.
In December 1998, representatives from Axent and PassGo met in Maryland to discuss Axent’s potential acquisition of PassGo. Thereafter, Becker and Jeffrey Carr (“Carr”), PassGo’s Chief Executive Officer, discussed, via telephone between Maryland and England, Axent’s potential acquisition of PassGo. Prior to this transaction, Lefebvre met with Nemirovsky in his Boston office to discuss Axent’s possible purchase of PassGo.
On March 5, 1999, Axent and PassGo signed a Letter of Intent, in which Axent was to purchase all of PassGo’s outstanding stock by March 31, 1999 through a “stock swap” with PassGo’s shareholders transferring their PassGo stock to Axent in exchange for Axent common stock. The executed Letter of Intent was sent to PassGo’s escrow agent, NationsBanc Montgomery’s (“NationsBanc”) Boston office, who forwarded it to HarbourVest. The parties then conducted “due diligence”; Axent sent Becker, along with six other employees, to England to meet with PassGo management and review documents. During the due diligence period, Axent’s representatives engaged in numerous written and oral communications with PassGo’s shareholders, including HarbourVest, and its Boston-based representatives, i.e., NationsBanc and HarbourVest’s attorneys, Testa, Hurwitz & Thibeaullt, LLP (“Testa”).
*325 On March 19, 1999, Becker telephoned Nemirovsky in Boston, Massachusetts, leaving a voice mail message, in response to Nemirovsky’s inquiry on behalf of the PassGo shareholders regarding the current and future business condition of Axent. On or about March 25, 1999, Becker called PassGo’s financial advisor, Benjamin Howe (“Howe"), and warned him that Axent could miss its projected revenues for the quarter by approximately 25%. On or about March 26, 1999, Becker telephoned Carr and warned him that Axent could miss its forecasted revenue for the quarter.
On March 28, 1999, Axent held a special meeting of its Board of Directors, at which members of Axent management and all of the Defendant Directors were present.[8] At this meeting, the Board discussed and approved Axent’s acquisition of PassGo. Further, the Board authorized Axent’s officers to: a) execute all relevant agreements, including the Agreement and an Escrow Agreement; b) prepare and file necessary documents with the United States Securities and Exchange Commission; c) prepare and file necessary documents with all state securities commissions or other administrative bodies; and d) execute and deliver all documents and instruments necessary to complete the transaction.
On March 29, 1999, Becker sent an e-mail to Carr in England, Nemirovsky in Massachusetts, and PassGo’s financial advisor, Benjamin Howe in Massachusetts, advising them that the Axent Board of Directors had approved the transaction with PassGo. There is a dispute, which is not material to the decision on jurisdiction given the control of the Board over this entire transaction, whether the e-mail was sent to Nemirovsky at Carr’s request or as a result of a specific directive from Axent’s Board of Directors. Becker, in his e-mail, speculated as to the financial forecast for both Axent and PassGo. The dispute over the interpretation of his statement that “the management team continued to be bullish on the long term opportunity and prospects of the company [Axent],” maybe crucial to whether there was a misrepresentation, but it is not material to the decision on jurisdiction.
During the evening of March 29, 1999, PassGo’s shareholders voted to approve PassGo’s sale to Axent. PassGo shareholders approved the transaction during a teleconference where the participants gathered in several places, including PassGo’s offices in England, California, and Massachusetts. The next day, pursuant to the Agreement signed individually by each PassGo shareholder, the transaction was closed.
On that same date, Axent delivered the Agreement to Nemirovsky’s attorneys in Massachusetts. Thereafter, Nemirovsky, on behalf of HarbourVest, executed the Agreement in Massachusetts.
The Agreement required that, at closing, shares of Axent stock would be transferred from Axent to each individual shareholder. To that end, Axent retained Boston EquiServ (“EquiServ”) of Massachusetts to issue and distribute from Axent’s account in Massachusetts to the PassGo shareholders the 1,480,000 shares set forth in the Agreement. Under the express terms of the Agreement, on March 30, 1999, Axent transferred 698,922 shares of its common stock to HarbourVest in Massachusetts “in payment of’ HarbourVest’s shares of PassGo. EquiServ held the Axent certificates representing the shareholders’ holdings in Axent stock until April 12,1999, when it disbursed the shares to the shareholders. Additionally, as part of the agreement, Axent directed 10% of the total shares into an escrow account at State Street Bank (“State Street”) in Massachusetts, where they still remain.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Comm. Corp., 410 Mass. 805, 809 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion.” Pederson v. Time, 404 Mass. at 17.
Personal Jurisdiction
Whether this court has personal jurisdiction over non-residents requires the court to answer two questions. First, does the court have jurisdiction under the Massachusetts long-arm statute? See G.L.c. 223A, §§3(a)-(h). Second, would the court’s exercise of jurisdiction be consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution? Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994); Connecticut Nat. Bank v. Hoover Treated Wood Products, Inc., 37 Mass.App.Ct. 231, 233 (1994).
This court may exercise personal jurisdiction over a person who or corporation which transacts business in the Commonwealth. G.L.c. 223A, §3(a).[9] Unless there is general jurisdiction over the person, the action must arise or be related to the defendant’s contacts with the forum. Heins v. Wilhelm Loh Wetzlar Optical Machinery GmbH & Co. KG, 26 Mass.App.Ct. 14, 22 (1988). The court may exercise specific jurisdiction over a defendant in a suit arising out of or related to the defendant’s contact with the forum. Id. A person transacts business in the Commonwealth if there are *326 any “purposeful acts by an individual, whether personal, private or commercial." Ross v. Ross, 371 Mass. 439, 441 (1976), see Johnson v. Witkowski, 30 Mass.App.Ct. 697, 713 (1991). The “transacting business” clause of the long-arm statute is construed broadly. Tatro v. Manor Care, Inc., 416 Mass. at 767. An isolated transaction or one with little impact on the commerce of the Commonwealth may be enough for the court to determine that the defendant has transacted business here. See Good Hope Indus., Inc., v. Ryder Scott Co., 378 Mass. 1, 8 n.13 (1979).[10] Actual physical presence of a defendantin this jurisdiction is not required to acquire personal jurisdiction under the “transacting business” clause. Good Hope Industries, Inc., 378 Mass, at 11, see also Tatro, 416 Mass, at 768. However, [i]f the literal requirements of the statute are satisfied, it also must be established that ‘the exercise of jurisdiction under State law [is] consistent with basic due process requirements mandated by the United States Constitution." Id. at 767 (citation omitted).
In the absence of any independent basis for jurisdiction, an individual’s mere status as an officer or director of a corporation conducting business in Massachusetts is generally insufficient for a Massachusetts court to exercise jurisdiction over the person. Roy v. Roy, 47 Mass.App.Ct. 921, 921 (1999). Personal jurisdiction over a corporation does not automatically confer personal jurisdiction over its officers and directors. Kleinerman v. Morse, 26 Mass.App.Ct. 819, 824 (1989). A corporate officer’s active participation in a corporation’s in-state activities, however, may confer personal jurisdiction. Id.
The Defendant Directors were “transacting business” in this Commonwealth under §3(a) of the long-arm statute. “ ‘Modern technology has taken us far beyond the point where two men must stand in each other’s physical presence to transact business. Widespread use of the telephone and the mails makefsl actual physical presence unnecessary in many cases.” Good Hope Industries, Inc., 378 Mass. at 11. For example, in Haddad v. Taylor, 32 Mass.App.Ct. 332 (1992), the court held that an action against a New York attorney was incorrectly dismissed for lack of personal jurisdiction despite the lack of physical presence.
Here, Axent’s Board controls the company’s significant financial transactions, including acquisitions. They also controlled this transaction.[11]
All the Defendant Directors were present at the March 28, 1999 Special Meeting of the Board held to approve the acquisition. The Board ratified and adopted all prior actions of the Axent officers in negotiating the Stock Exchange Agreement. To fulfill their duties in connection with this transaction, the Defendant Directors voted on specific resolutions. Each Defendant Director was involved in reviewing, supervising, authorizing, directing and/or controlling the following:
1. Axent’s execution of the Letter of Intent and negotiations with Massachusetts citizens;
2. Axent’s offer to acquire PassGo, including PassGo’s facilities and employees in Massachusetts, for more than $50 million in the form of Axent stock sold to investors known to reside in Massachusetts;
3. Axent’s sale of 698,992 shares of Axent stock to HarbourVest, a Massachusetts business;
4. The issuance of approximately 1.5 million shares of Axent stock in Massachusetts;
5. Axent’s retention of a Massachusetts transfer agent (EquiServ), and a Massachusetts escrow agent (State Street); and
6. Axent’s and its representatives’ forwarding and receiving of numerous documents and correspondence into and from Massachusetts to HarbourVest’s attorneys in an effort to negotiate and finalize the transaction; and
7. Communications Becker made, via voice mail and e-mail to Nemirosky in Massachusetts.
The Defendant Directors’ active management of, and “plenary control” over, see Kleinerman v. Morse, 26 Mass.App.Ct. at 823, this dealthat is, the sale of all the stock of a corporation which has an operating division in Massachusetts to shareholders, at least one large one of whom is in Massachusetts, in exchange for stock in a business which has a substantial business operating in Massachusettsis sufficient to impose jurisdiction on these Defendant Directors. Id. (“The plenary control which NAMIC [an out-of-state corporation] exerted over NAMFO [a Massachusetts-based corporation] is dramatically illustrated by NAMIC’s decision to fold up NAMFO at its will and to take over its functions” and is sufficient to establish jurisdiction over the corporation); see also Haddad, 32 Mass.App.Ct. at 335-36. Persistent and pervasive business conduct and control “obviates the need to itemize and weigh small acts to decide whether they add up to transacting business in the Commonwealth.” Kleinerman, 26 Mass.App.Ct. at 823. Furthermore, where a defendant seeks to participate in or has an effect on the economic life of the Commonwealth, he maybe found to have transacted business here. Carlson Corp. v. Univ. of Vermont, 380 Mass. 102, 107 (1980) (“[w]here the non-resident defendants’ contacts with Massachusetts had substantial commercial consequence in this state, personal jurisdiction was found, notwithstanding the absence of actual physical presence in Massachusetts”).
The Defendant Directors’ contacts with Massachusetts are also clearly sufficient to satisfy constitutional Due Process standards. See Tatro, 416 Mass, at 767, Kleinerman, 26 Mass.App.Ct. at 823-24. Jurisdiction is proper if the defendants also had minimum contacts with the forum state at the time of filing the complaint, such that “the assertion of jurisdiction over [defendants would] not offend ‘traditional notions of fair play and substantial justice.’ ” Tatro, Inc., 416 Mass, at 773 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). “In practical terms, this means that an assertion of jurisdiction must be tested for its *327 reasonableness, taking into account such factors as the burden on the defendant of litigating in the plaintiffs chosen forum, the forum state’s interest in adjudicating the dispute, and the plaintiffs interest in obtaining relief.” Tatro, 416 Mass, at 773.
Each of these Defendant Directors either had ongoing business dealings in Massachusetts or had specific contacts with this transaction that make it not unfair for them to be subject to the jurisdiction of Massachusetts. The burden imposed upon the Defendant Directors by requiring them to defend this action in Massachusetts does not amount to a constitutional infirmity. They, on behalf of their company, acquired a $50 million company having one-half of its United States operating divisions in Massachusetts. The Defendant Directors chose to do business with an entity whose principal place of business is in Massachusetts. A few trips to the Commonwealth cannot be unreasonable in these circumstances. Massachusetts clearly has an interest in adjudicating this dispute, where the stock being transferred is between two corporations, both of which do business in Massachusetts, and where the largest shareholder is based in Massachusetts. HarbourVest has an interest in litigating in Massachusetts.
“The determination whether personal jurisdiction can properly be asserted by the courts of the forum state is ‘one in which few answers will be written ”in black and white. The greys are dominant and even among them the shades are innumerable." ’ “ Carlson Corp, 380 Mass, at 105 (citations omitted). Each case turns on its own facts. Id. In this case, given the broad construction of the transacting business clause, the ’’plenary control" exercised over the deal by the Defendant Directors, and the connection to and commercial consequences upon this jurisdiction, this court finds that jurisdiction is proper in this Commonwealth.
II. Claims Against Defendants Under Massachusetts Uniform Securities Act
Under G.L.c. 110A, §101 of the Uniform Securities Act, it is “unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly (1) to employ any device, scheme, or artifice to defraud, (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.” G.L.c. 110A, §101. A sale of securities includes “every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value.” G.L.c. 110A, §401 (i)( 1). An offer includes “every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value.” G.L.c. 110A, §401 (i)(2). Every director of a seller is subject to liability to the same extent as the seller. See G.L.c. 110A, §410(b). HarbourVest contends that this court may exercise personal jurisdiction over the Defendant Directors under G.L.c. 110A, §414(h), which is modeled after the Uniform Securities Act. Section (h) states, in relevant part:
[w]hen any person, including any nonresident of the commonwealth engages in conduct prohibited or made actionable by this chapter or any rule or order hereunder, . . . and personal jurisdiction over him cannot otherwise be obtained in the commonwealth, that conduct shall be considered equivalent to his appointment of the secretary or his successor in office to be his attorney to receive service of any lawful process . . . which grows out of that conduct and which is brought under this chapter or any rule or order hereunder, with the same force and validity as if served on him personally.
Personal jurisdiction acquired under this Act is independent of jurisdiction which maybe acquired under the Long-Arm Statute. See American Microtel, Inc. v. Secretary of State, Civ. A. No. 93-5874, 1995 WL 809575 (Mass. Super. Jan. 27, 1995) [3 Mass. L. Rptr. 479]. Section (h), closely modeled after the nonresident motorist statute as constitutionally approved in Hess v. Pawloski, 274 U.S. 352 (1927), provides consent to jurisdiction in this Commonwealth. See Unif. Securities Act, §414(h), official cmt. (“The purpose of §414(h) is to provide for substituted service of process when a seller in State S directs an offer into State B in violation of the registration provisions of State B or fraudulently. Under §414(h) the buyer may sue the seller in State B . . . Recent cases indicate that it is due process of law for a court of State B to enter a judgment... if the person in State S effected only an isolated transaction in State B without ever entering the state.”) Jurisdiction under the statute is grounded upon implied consent. See Saporita v. Litner, 371 Mass. 607, 617 (1976).[12] Service, and consequently jurisdiction, under §414(h), however, is not effective unless the plaintiff leaves a copy of the process in the office of the secretary and
(1) the plaintiff . . . forthwith sends notice of the service and a copy of the process by registered mail to the defendant or respondent at his last known address or takes other steps which are reasonably calculated to give actual notice, and (2) the plaintiffs affidavit of compliance with this subsection is filed in the case on or before the return day of the process, if any, or within such further time as the court allows.
By analogy to the similarly-worded nonresident motorist statute, it is clear that the court may not exercise jurisdiction under §414(h) unless all of the statutory requirements have been satisfied by the plaintiff. In this commonwealth, “service under [nonresident motorist statute] on nonresident defendant in automobile causes arising in Massachusetts (instead of forcing a plaintiff to obtain personal jurisdiction of nonresident defendant where he resides) is a privilege which must be carefully exercised in the manner specified [in the statute].” Gifford v. Spehr, 358 Mass. 658, 663-64 (1971), see Nickerson v. Fales, 342 Mass. 194, 198 *328 (1961). “These sections are designed to ensure full compliance with the requirements of due process . . Id. Similarly, here, HarbourVest must strictly comport with the requirements of §414(h) in order to confer personal jurisdiction. Although the Defendant Directors agreed to accept service in lieu of service on the secretary, to date, no affidavit of compliance has been filed as required by the statute; and thus, this statute does not confer personal jurisdiction. In any event, subsection (h) of Section 414 applies only where “personal jurisdiction over [any person] cannot otherwise be obtained in the commonwealth.” Here, this court otherwise has jurisdiction over the Defendant Directors.
Axent and the Defendant Directors also argue that the court does not have jurisdiction because there has been no violation of the Uniform Securities Act. This Act applies only to challenged offers to sell stock made in Massachusetts or offers to buy stock that were made and accepted in Massachusetts. They say that Axent did not offer to sell or buy stock in Massachusetts and there was no offer to buy Axent stock made and accepted in Massachusetts. Additionally, the defendants assert that the Uniform Securities Act specifically exempts this transaction as a “stock-for-stock merger[s] or consolidations pursuant to a shareholder vote under a certificate of incorporation.” Id.
The terms defined in §401 do not include “any act incident to a class vote by stockholders, pursuant to the certificate of incorporation or the applicable corporation statute, on a merger, consolidation, reclassification of securities, or sale of corporate assets in consideration of the issuance of securities of another corporation.” G.L.c. 110A, §401(i)(6)(C). The “burden of proving an exemption or an exception from a definition is upon the person claiming it.” G.L.c. 110A, §402(d).
HarbourVest has satisfied its burden under Rule 56 by pointing to specific facts which, if proved, would bring this transaction within the purview of the Uniform Securities Act. At the very least, the Form D filed by Axent with the Securities and Exchange Commission indicates that it had solicited or intended to solicit purchasers in Massachusetts. The stock appears to have been “disposed of’ in Massachusetts; Axent engaged Boston Equi-Serv in Massachusetts to issue and distribute from Axent’s account in Massachusetts to the PassGo shareholders the 1,480,000 shares transferred under the Agreement. Axent transferred the shares of stock to HarbourVest, a Massachusetts-based corporation; Boston EquiServ held the Axent certificates until April 12, 1999 when it disbursed the shares to the shareholders. Ten percent of the total shares continue to be held in escrow at the State Street Bank in Massachusetts.
HarbourVest has shown that there are material facts in dispute as to whether the “stock-for-stock merger[s] or consolidations pursuant to a shareholder vote under a certificate of incorporation” exemption applies to this transaction. This does not, on the facts presented, appear to be a “class vote” by “stockholders” in a “corporation,” all as defined under the Act. Nor does the transaction appear to be a “consolidation” or “merger” within the meaning of the statute. See Plaintiffs’ Sur-Reply at 3-6.
The defendants’ motion for summary judgment on the Uniform Securities Act claim is denied.
III. Chapter 93A Claim
To maintain a claim under G.L.c. 93A, §11, a plaintiff must allege that the unfair and deceptive acts occurred “primarily and substantially” in Massachusetts. To determine whether allegedly unfair and deceptive actions and transactions occurred primarily and substantially within Massachusetts, courts employ a functional analysis focusing on three factors: (1) the location where the defendant committed the deceptive or unfair acts or statements; (2) the place where the plaintiff received and acted upon those acts or statements; and (3) the situs of the plaintiffs loss. Clinton Hosp. Ass’n v. Corson Group, Inc., 907 F.2d 1260, 1265-66 (1st Cir. 1990) (citing Bushkin Assoc., Inc. v. Raytheon Co., 393 Mass. 622, 637-38 (1985)). The place of receipt of the conduct “is of special significance,” and the place of conduct “is the least weighty” factor. Play Time, Inc. v. LDDS Metromedia Comm.,Inc., 123F.3d 23, 33(1stCir. 1997). “[T]hecritical. factor is the locus of the recipient of the deception at the time of the reliance.” Roche v. Royal Bank of Canada, 109 F.3d 820, 830 (1st Cir. 1997). The exemption from 93A liability, if the acts did not occur primarily and substantially in Massachusetts, is “available as a defense, rather than a jurisdictional prerequisite to suit, and thus defendants bear the burden of proving a lack of primary and substantial involvement in Massachusetts.” Kansallis Finance Ltd. v. Fern, 40 F.3d 476, 481 (1st Cir. 1994).
Axent and the Defendant Directors say that the key events took place in Maryland and England. Furthermore, they argue that Becker’s two key communications, the voice mail and e-mail messages, originated from Axent’s offices in Maryland and that the receipt of these messages occurred in various placesonly one of which was Massachusetts.
HarbourVest alleges that Axent and the Defendant Directors deceived plaintiffs into purchasing Axent stock that they knew was worth far less than represented to them. This deception was allegedly manifested through two deceptive communications, a voice mail and electronic mail, both of which were directed to, received, and detrimentally relied upon by HarbourVest in Massachusetts. In addition, 97% of the stock at issue in this case was sold by Axent in Massachusetts. The issuance and delivery of shares was conducted by Axent’s transfer agent, EquiServ, in Massachusetts. Shares retained as part of an escrow established under the Agreement were issued to State Street in Massachusetts. Axent negotiated and communicated with the plaintiffs’ professional representatives, NationsBanc and Testa, in Massachusetts. Most importantly the loss to HarbourVest occurred in Massachusetts.
*329 The defendants’ motion for summary judgment as to plaintiffs’ Chapter 93A count is denied.
IV. Forum Non Conveniens
Axent and the Defendant Directors argue that this case should be dismissed under the doctrine of Jorum non conveniens because the principal events giving rise to this litigation took place outside of this forum and the majority of witnesses and relevant documents are located outside of Massachusetts. “When the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just.” G.L.c. 223A, §5. A decision whether to dismiss an action under the doctrine offorum non conveniens cannot be made by applying a universal formula and depends greatly on the specific facts of the case. W.R. Grace & Co. v. Hartford Accident & Indemnity Co., 407 Mass. 572, 577 (1990).
Dismissal on the ground of Jorum non conveniens is justified ”[w]here it appears that complete justice cannot be done here, that the defendant will be subjected to great and unnecessary inconvenience and expense, and that the trial will be attended, if conducted here, with many if not insuperable difficulties which all would be avoided without special hardship to the plaintiff if the proceedings are brought in the jurisdiction where the defendant is domiciled, where service can be had, where the cause of action arose and where justice can be done.” New Amsterdam Casualty Co. v. Estes, 353 Mass. 90, 94 (1967). “Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive . . . But unless the balance is strongly in favor of the defendant, the plaintiffs choice of forum should rarely be disturbed.” W.1?. Grace & Co. v. Hartford Accident & Indemnity Co., 407 Mass, at 579. Further, a decision to dismiss an action on the grounds of forum non conveniens should not be made unless all the parties most probably can be made parties in another, more convenient forum. Id. at 579. Piecemeal resolution of common factual questions is inappropriate, and dispersed decision-making wastes the time and resources of parties and the courts and permits inconsistent results. W.R. Grace & Co. v. Hartford Accident & Indemnity Co., 407 Mass, at 579.
Where, as here, an action is based upon a claim of fraud or misrepresentation, the action is “transitory” or “in personam” and relates to the individual committing the fraud. Amerda Hess Corp. v. Garabedian, 416 Mass. 149, 151 (1993); First Federal Savings & Loan Assoc. v. Merrimack Valley National Bank, 5 Mass.App.Ct. 320, 322-23 (1977). Thus, while this action relates to the stock swap of .corporations with headquarters located outside of the Commonwealth, the basis of the action is the fraud committed by defendants in misrepresenting the value of its stock to plaintiffs and, therefore, constitutes a transitory action that may be brought in this forum.
A plaintiff may choose the forum so long as it comports with the law. Defendants deliberately chose to purchase a company which had an operating division in Massachusetts with an exchange of stock in a company with an operating business in Massachusetts. See Carlson Corp., 380 Mass. at 109. The defendants had many contacts with Massachusetts in this transaction. Becker as CEO of Axent had ultimate responsibility for Axent’s Massachusetts business. Axent representatives, including Becker himself, traveled to England to accomplish the due diligence in this $50 million transaction; it surely cannot be too burdensome to travel a short distance up the East Coast from Maryland to Massachusetts to defend that very transaction. Witnesses and documents, not including the plaintiffs themselves and their documents, are in a number of places, but a number surely are in Massachusetts. Both the transfer and escrow agents for the stock, as well as HarbourVest’s financial advisor, Benjamin Howe, is in Massachusetts. I find and rule that it is not unfair or unreasonable to compel defendants to defend this action in Massachusetts. See id. This action will not be dismissed on the grounds of Jorum non conveniens.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants’ motion for summary judgment is DENIED.

 Becker is not moving for summary judgment at this time. The court will review this motion for summary judgment as it applies to Axent and the Defendant Directors only, but will review the motion on forum non conveniens grounds as to all defendants, including Becker.

 The facts stated in this section are taken from the Defendants' Statement of Facts in support of their motion, the Plaintiffs’ Opposition to that Statement of Facts, the affidavits and exhibits submitted by both parties, all viewed hi the light most favorable to the plaintiffs as the non-moving parties. If these facts are opposed, they are, of course, disputed; the court will deem such dispute material unless it says otherwise in this opinion.

 Prior to March 29, 1999, HarbourVest, Reyes, and eight other investors held shares in CKS Limited (“CKS”), a private company, which was a holding company for the operating company known as PassGo Technologies, Ltd. (One of two of PassGo’s operating divisions in the United States was qualified to do business in the Commonwealth of Massachusetts.) The plaintiffs refer to CKS in the complaint as PassGo; the defendants make nothing of this business structure in opposing the plaintiffs’ motion to dismiss on jurisdictional grounds. Indeed, there appears not much to be made of it. The CKS shareholders, not CKS, were the sellers. HarbourVest, a business with a principal place of business in Massachusetts, was one of these shareholders. In analyzing whether there is jurisdiction over the buyer and its directors, the domicile, residence, or status of the holding company itself is irrelevant. The court will refer to CKS as PassGo unless the context demands otherwise.

 HarbourVest is in the business of managing venture capital funds that invest in private equity partnerships and non-public corporations.

 G.L.c. 223A, §3(a), allows jurisdiction “if the defendant either directly or through an agent transacted any business in the Commonwealth, and if the alleged cause of action arose from such transaction of business.” Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 6 (1979). The conduct on which long-arm jurisdiction is sought to be based must be materially related to the cause of action in the case. Accordingly, contacts which did not give rise to the cause of action here are not being considered in determining whether the defendant was transacting business under Section 3(a) of the long-arm statute. Id. at 10-11, £n. 17. Rather such contacts are “indicative of the defendant’s intention to involve itself in Massachusetts commerce”; and whether the defendant ought to be expected to defend itself here. Id.

 Neither party has identified where Axent held its special meeting of the Board of Directors.

 HarbourVest does not claim that the Defendant Directors committed a tort in Massachusetts (unless a violation of G.L.c. 110A could be construed as a tort). In their reply to the defendants’ motion, they argue only that the Defendant Directors transacted business in Massachusetts.

 “The Supreme Judicial Court has suggested that even in two cases where the contacts with the Commonwealth were held to be constitutionally insufficient [citations omitted], the defendants might be viewed literally as having ‘transacted business’ within the Commonwealth.” Haddad v. Taylor, 32 Mass.App.Ct. 332, 335 (1992) (quoting Good Hope Indus., Inc., 378 Mass. at 8 n.13).

 Axent’s Board has also been active in the oversight of Axent’s Massachusetts entity, acquired in 1997, including evaluating and determining employee compensation issues, such as the approval of stock options to employees of this company (as well as approving and directing the issuance of Axent stock options to several of PassGo’s Massachusetts-based employees, in this transaction).

 The court’s exercise of personal jurisdiction on the basis of §414(h), must also comport with the requirements of Due Process. See Saporita, 371 Mass. at 618.